UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>    ENRON CORP.<br><br><br>                             Debtors. | District Court<br>Case No. 07-CV-218 (LAP)<br>Case No. 07-CV-3078 (LAP) |
| PUBLIC UTILITY DISTRICT NO. 1 OF SNOHOMISH<br>COUNTY, WASHINGTON<br><br>                           Plaintiff-Appellant,<br>       - against –<br><br><br>ENRON POWER MARKETING, INC.<br>                     Defendant-Appellee. | Bankruptcy Court<br>Case No. 01-16034 (AJG)<br>Chapter 11<br>Jointly Administered<br><br>Adv. Proc. No. 03-2064 (AJG) |

## BRIEF OF APPELLEE

Israel Dahan, Esq. (ID 6148)
CADWALADER, WICKERSHAM & TAFT LLP

One World Financial Center
New York, NY 10281
(212) 504-6000

and

Peter Gruenberger, Esq. (PG 6040)
Jonathan D. Polkes, Esq. (JP 4265)
Howard B. Comet, Esq. (HC 4353)

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
(212) 310-8000

Mark C. Ellenberg, Esq. (ME 6927)
Peter Friedman, Esq. (PF 3932)
CADWALADER, WICKERSHAM & TAFT LLP
1201 F Street, NW
Washington, DC 20004
(202) 862-2200

*Counsel for Appellee Enron Power Marketing, Inc.*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ......................................................................................... 1

STATEMENT OF ISSUES ................................................................................................ 3

FACTS ............................................................................................................................... 4

    A.    The Enron Chapter 11 Cases .................................................................... 4

    B.    EPMI's Trading Contracts ........................................................................ 4

    C.    EPMI's Complaint Against Snohomish ..................................................... 5

    D.    FERC'S Gaming And Partnership Proceeding .......................................... 8

    E.    The Cantwell Amendment ......................................................................... 9

    F.    FERC's June 28, 2006 Order Applying The Cantwell Amendment To Snohomish's Petition. ............................................................................... 10

    G.    *FERC's* Simultaneous Refusal To Apply Cantwell Amendment In The Mirant Case .............................................................................................. 12

    H.    This Court's Ruling On The Construction And Constitutionality Of The Cantwell Amendment ............................................................................... 12

    I.    EPMI's Summary Judgment Motion And Snohomish's Renewed Motion To Compel Arbitration ............................................................................ 14

    J.    Snohomish's Second FERC Petition ...................................................... 15

    K.    EPMI'S Motion To Enforce The Automatic Stay .................................. 15

    L.    The Bankruptcy Court's Opinion And Order Finding Snohomish Violated The Automatic Stay ................................................................................. 16

    M.    The Bankruptcy Court's Ruling On EPMI's Summary Judgment Motion And Snohomish's Motion To Dismiss .................................................... 17

    N.    EPMI Promptly Commenced Arbitration Following The Bankruptcy Court's March 2007 Decision And Order Compelling Arbitration ........... 18

    O.    Administrative Law Judge Issues Initial Decision In FERC's Gaming And Partnership Proceeding Partially In Favor Of Snohomish ....................... 18

**TABLE OF CONTENTS (cont'd)**

Page

STANDARD OF REVIEW ........................................................................................19

ARGUMENT ............................................................................................................20

I.   THE BANKRUPTCY COURT CORRECTLY DETERMINED THAT SNOHOMISH'S PETITIONS TO FERC SOUGHT TO EXERCISE CONTROL OVER PROPERTY OF EPMI'S ESTATE AND THEREFORE VIOLATED THE AUTOMATIC STAY .........................................................................................23

   A.   Overview ....................................................................................................23

   B.   Section 362(a)(3) Bars Actions Instituted Against Property Of EPMI's Estate Such As Its Contractual Right To Termination Payments ..................25

   C.   Snohomish Impermissibly Contorts Cases Permitting A Party To Defend Itself In Litigation Brought By A Debtor Into An Unfettered Right To Institute New Proceedings Outside The Bankruptcy Context ................................26

      1.   Snohomish's Reliance On *Lovett v. Honeywell* Is Misplaced ..................28

      2.   The Interpleader Cases Are Inapposite ......................................................30

II.  THE POLICE AND REGULATORY POWER EXCEPTION TO THE AUTOMATIC STAY DOES NOT APPLY ....................................................................30

   A.   Overview ....................................................................................................30

   B.   Snohomish's Contention That FERC Decided Its June 28, 2006 Order "In Accordance With Its Long-Standing Authority" Lacks Merit ................................33

      1.   FERC's June 28, 2006 Order Rests Solely On Its Interpretation Of New York State Contract Law And Was Not An Exercise Of Police Or Regulatory Power ........................................................................33

      2.   This Court's Decision On The Cantwell Amendment Demonstrates That FERC Was Not Exercising Police Power ...........................................34

      3.   *Board of Governors Of The Fed. Reserve Sys. v. MCorp Fin., Inc.* And *In re FCC*, Are Inapplicable And Do Not Aid Snohomish ................34

      4.   Because FERC Acted In An Adjudicatory Capacity Rather Than In An Enforcement Capacity, The Police And Regulatory Power Exception Is Inapplicable ........................................................................35

III. FERC'S JUNE 28, 2006 ORDER HAS NO PRECLUSIVE EFFECT .............................36

IV.  THE BANKRUPTCY COURT DID NOT ABUSE ITS DISCRETION IN DECLINING TO STAY ON "PRIMARY JURISDICTION" GROUNDS THE ADVERSARY PROCEEDING PENDING FINAL ADJUDICATION BY FERC OF SNOHOMISH'S PETITION AGAINST EPMI UNDER THE FPA ..........................38

   A.   Overview ....................................................................................................38

   B.   Snohomish Lacks Standing To Assert Its Primary Jurisdiction Argument ..........39

# TABLE OF CONTENTS (cont'd)

Page

C.  Snohomish's "Primary Jurisdiction" Argument Lacks Merit...............................41

    1.  Snohomish Has Confused And Conflated The Two Doctrines of "Primary Jurisdiction" – And Neither One Applies Here..........................41

    2.  Exclusive Agency Jurisdiction Is Lacking...................................................43

    3.  Concurrent Jurisdiction Does Not Exist With Respect To The Issue Now Before FERC ....................................................................................45

D.  The Bankruptcy Court Correctly Declined To Exercise Its Discretion To Order A Stay Based On Snohomish's Vague Notions Of Judicial Economy........47

V.  CONCLUSION.................................................................................................................51

# TABLE OF AUTHORITIES

**PAGE(S)**

## CASES

*Abbs v. Sullivan,*
   963 F.2d 918 (7th Cir. 1992) ................................................................40

*Abrams v. Southwest Leasing & Rental Inc. (In re Abrams),*
   127 B.R. 239 (B.A.P. 9th Cir. 1991).......................................................26

*Advance United Expressways, Inc. v. Eastman Kodak Co.,*
   965 F.2d 1347 (5th Cir. 1992) ...............................................................44

*Advamtel, LLC v. Sprint Commc'ns Co.,*
   105 F. Supp. 2d 476 (E.D. Va. 2000) ................................................48, 49

*Airco Alloys Div. v. Niagara Mohawk Power Corp.,*
   65 A.D.2d 378 (N.Y. 4th Dep't 1978).....................................................20

*Alberta Gas Chem. Ltd. v. Celanese Corp.,*
   650 F.2d 9 (2d Cir. 1981).......................................................................47

*Amerada Hess Corp. v. Enron Corp.,*
   2004 WL 2149100 (S.D.N.Y. Sept. 24, 2004)...........................................6

*America Nat'l Bank of Austin v. MortgageAmerica Corp. (In re MortgageAm. Corp.),*
   714 F.2d 1266 (5th Cir. 1983) ...............................................................26

*Amoco Prod. Co.,*
   Dkt. Nos. C169-491-001, C169-491-002, 1988 WL 244400
   (F.E.R.C. April 19, 1986) ................................................................22-23

*Arkansas La. Gas Co. v. Hall,*
   Dkt. No. RI76-28, 79 WL 167678 (May 19, 1979)..................12, 21, 33, 36

*Arkansas La. Gas Co. v. Hall,*
   453 U.S. 571 (1981).............................................................................20

*Arsberry v. Illinois,*
   244 F.3d 558 (7th Cir. 2001) .........................................................41-42, 44

*Atlantic City Elec. Co. v. FERC,*
   295 F.3d 1 (D.C. Cir. 2002)..................................................................21

*AT&T Corp. v. Public Serv. Enter. of Pa., Inc.,*
   1999 WL 672543 (S.D.N.Y. Aug. 26, 1999)...........................................48

# TABLE OF AUTHORITIES (cont'd)

Page(s)

*Baltimore & Ohio RR Co. v. Wisconsin Cent., Ltd.*,
1997 WL 545491 (N.D.Ill. Sept. 2, 1997), *aff'd*, 154 F.3d 404 (7th Cir. 1998) ...............49

*Board of Governors of the Fed. Reserve Sys. v. MCorp Fin., Inc.*,
502 U.S. 32 (1991)................................................................................................34

*Borough of Lansdale v. PP & L, Inc.*,
426 F. Supp. 2d 264 (E.D. Pa. 2006) ..................................................................38

*BP West Coast Products, LLC v. SFPP, L.P.*,
Dkt. Nos. ORO7-3-000 & ORO7-6-000, 2007 FERC LEXIS 586
(F.E.R.C. Mar. 29, 2007) ......................................................................................19

*Boston Edison Co. v. FERC*,
856 F.2d 361 (1st Cir. 1988)................................................................................20

*California v. Rooney*,
483 U.S. 307 (1987)..............................................................................................40

*Celotex Corp. v. Edwards*
514 U.S. 300, 308 (1995)......................................................................................50

*CFTC v. Incomco, Inc.*,
649 F.2d 128 (2d Cir. 1981)..................................................................................32

*Chao v. Hospital Staff. Svs., Inc.*,
270 F.3d 374 (6th Cir. 2001) ..........................................................................10, 32

*Checkers Drive-in Rest., Inc. v. Comm'r of Patents & Trademarks*,
51 F.3d 1078 (D.C. Cir. 1995)..............................................................................25

*Cincinnati Bell Telegraph Co. v. Allnet Communc'n Serv., Inc.*,
17 F.3d 921 (6th Cir. 1994) ...........................................................................48, 49-50

*City of Vernon*,
Dkt. No. EL06-3-000, 2006 WL 1757331 (June 28, 2006).........................12, 33

*Cohen v. Drexel Burnham Lambert Grp., Inc.*
*(In re Drexel Burnham Lambert Grp., Inc.)*,
138 B.R. 687 (Bankr. S.D.N.Y. 1992)..................................................................26

*Colorado River Water Cons. Dist. v. United States*,
424 U.S. 800 (1976)..............................................................................................48

**TABLE OF AUTHORITIES (cont'd)**

Page(s)

*Concerned Citizens of Cohocton Valley, Inc. v. New York State*
    *Dep't of Env. Conservation,*
    127 F.3d 201 (2d Cir. 1997)..............................................................................39

*Corporacion de Servicios Medicos Hospitalarios de Fajardo v. Mora (In re*
    *Corporacion de Servicios Medicos Hospitalarios de Fajardo),*
    805 F.2d 440 (1st Cir. 1986)............................................................................31

*DeWitt v. Corso (In re Corso),*
    180 B.R. 589 (C.D. Cal. 1994) ........................................................................30

*Doswell Limited Partnership L.P. v. Virginia Electric & Power Co.,*
    2005 FERC LEXIS 575 (Mar. 11, 2005)..........................................................22

*Eateries, Inc. v. J.R. Simplot Co.,*
    346 F.3d 1225 (10th Cir. 2003) .........................................................................4

*Electrical Fittings Corp. v. Thomas & Betts Co.,*
    307 U.S. 241 (1939).........................................................................................40

*El Paso Electric Co.,*
    Dkt. EL03-180-000 (2007) .................................................................................9

*Enron Corp. v. Belo Co.,*
    317 B.R. 232 (S.D.N.Y. Nov. 2, 2004)...............................................................6

*Enron Corp. v. California ex rel. Lockyer (In re Enron Corp.),*
    314 B.R. 524 (Bankr. S.D.N.Y. 2004)..............................................................31

*Enron N. Am. Corp. v. Media Gen., Inc.,*
    2004 WL 1197243 (S.D.N.Y. May 28, 2004) .....................................................6

*Enron Power Mktg., Inc.,*
    Dkt. Nos. EL03-1003 & EL03-154-004, 2007 WL 1791179
    (FERC June 21, 2007)................................................................................18, 19

*Enron Power Mktg., Inc. v. City of Santa Clara,*
    2003 WL 68036 (S.D.N.Y. Jan. 8, 2003) ...........................................................6

*Enron Power Mktg., Inc. v. Holcim, Inc.,*
    2004 WL 2149124 (S.D.N.Y. Sept. 23, 2004).....................................................6

*Enron Power Mktg. Inc. v. Luzenac Am. Inc. (In re Enron Corp.),*
    2006 WL 2548453 (Aug. 31, 2006 S.D.N.Y.)............................................ *passim*

## TABLE OF AUTHORITIES (cont'd)

Page(s)

*Enron Power Mktg., Inc. v. Public Util. Dist. No. 1 of Snohomish County*
   *(In re Enron Corp.),*
   2006 WL 3140640 (October 26, 2006 Bankr. S.D.N.Y.) .......................................... *passim*

*Enron Power Mktg., Inc. v. Public Util. Dist. No. 1 of Snohomish Cty.*
   *(In re Enron Corp.),*
   346 B.R. 48 (Bankr. S.D.N.Y. Mar. 9, 2007) ............................................................. 18-19

*Enron Power Mktg., Inc. v. Public Util. Dist. No. 1 of Snohomish Cty.*
   *(In re Enron Corp.),*
   2007 WL 706944 (March 9, 2007 Bankr. S.D.N.Y.) ...................................................18, 19

*Ford v. Garcia,*
   289 F.3d 1283 (11th Cir. 2002) .........................................................................................41

*FPC v. Sierra Pac. Power Co.,*
   350 U.S. 348 (1956)............................................................................................................21

*Frontier Commc'ns. of Mt. Pulaski, Inc. v. AT&T Co.,*
   957 F. Supp. 170 (C.D. Ill. 1997) .....................................................................................50

*Fulton Cogeneration Assocs. v. Niagara Mohawk Power Corp.,*
   84 F.3d 91 (2d Cir. 1996)............................................................................................42, 47

*Golden Hill Paugusett Tribe of Indians v. Weicker,*
   39 F.3d 51 (2d Cir. 1994)............................................................................................42, 45

*Golden Spread Elec. Coop., Inc.,*
   40 F.E.R.C. ¶ 61,348 (1987) .......................................................................................21, 22

*Gulf State Util. Co. v. Alabama Power Co.,*
   824 F.2d 1465 (5th Cir. 1987) ..........................................................................................45

*Hendricks v. Dynegy Power Mktg., Inc.,*
   160 F. Supp. 2d 1155 (S.D. Cal. 2001)..............................................................................44

*IBEW, Local 532 v. Brink Constr. Co.,*
   824 F.2d 207 (9th Cir. 1987) ............................................................................................19

*In re Christensen,*
   167 B.R. 213 (Bankr. D. Or. 1994)....................................................................................35

*In re Enron Corp.,*
   300 B.R. 201 (Bankr. S.D.N.Y. 2003)........................................................................23, 26

# TABLE OF AUTHORITIES (cont'd)

Page(s)

*In re FCC*,
    217 F.3d 125 (2d Cir. 2000).................................................................................. 34-35

*In re First Alliance Mortgage Co.*,
    263 B.R. 99 (B.A.P. 9th Cir. 2001)...............................................................................31

*In re Gruntz*,
    202 F.3d 1074 (9th Cir. 2000) ......................................................................................37

*In re Massenzio*,
    121 B.R. 688 (Bankr. N.D.N.Y. 1990) ..........................................................................35

*In re Megan-Racine Assocs., Inc.*,
    180 B.R. 375 (Bankr. N.D.N.Y. 1995) ..........................................................................46

*In re Methyl Tertiary Butyl Ether ("MTBE") Prod. Liab. Litig.*,
    2007 WL. 150338 (May 24, 2007 2d Cir.) .....................................................................31

*In re O'Brien*,
    184 F.3d 140 (2d Cir. 1999)..........................................................................................40

*In re Reporters Comm. For Freedom of the Press*,
    773 F.2d 1325 (D.C. Cir. 1985).....................................................................................40

*In re Vierkant*,
    240 B.R. at 325 (8th Cir. 1999) ....................................................................................37

*Inter-City Gas Corp. v Boise Cascade Corp.*,
    845 F.2d 184 (8th Cir. 1988) ........................................................................................19

*Interactive Gift Exp., Inc. v. Compuserve Inc.*,
    256 F.3d 1323 (Fed. Cir. 2001).....................................................................................41

*Joe DeLisi Fruit Co. v. Minnesota Dep't of Ag. (In re Joe Delisi Fruit Co.)*,
    11 B.R. 694 (Bankr. D. Minn. 1981) .............................................................................32

*Justus v. Finance News Network, Inc. (In re Finance News Network, Inc.)*,
    158 B.R. 570 (S.D.N.Y. 1993).......................................................................................27

*Kalb v. Feuerstein*,
    308 U.S. 433 (1940).....................................................................................................37

*Keene Corp. v. Acstar Ins. Co. (In re Keene Corp.)*,
    162 B.R. 935 (Bankr. S.D.N.Y. 1994)............................................................................24

**TABLE OF AUTHORITIES (cont'd)**

Page(s)

*Louisiana. Natural Gas Pipeline Inc.,*
   65 F.E.R.C. ¶ 61,191 (1993) .........................................................................23

*Lawson Burich Assocs., Inc. v. Axelrod (In re Lawson Burich Assocs., Inc.),*
   31 B.R. 604 (S.D.N.Y. 1983).........................................................................31

*Lovett v. Honeywell, Inc. (In re Transport Sys. Int'l, Inc.),*
   110 B.R. 888 (D. Minn. 1990), *aff'd on other grounds,*
   930 F.2d 625 (8th Cir. 1991) .............................................................. 28-29, 31

*LTV Corp. v. Aetna Cas. & Sur. Co. (In re Chateaugay Corp.),*
   116 B.R. 887 (Bankr. S.D.N.Y. 1990)............................................................26

*Martin-Trigona v. Champion Fed. Svgs. & Loan Ass'n,*
   892 F.2d 575 (7th Cir. 1989) .........................................................................27

*MCI Telecomm. Corp. v. Dominican Commc'n Corp.,*
   984 F. Supp. 185 (S.D.N.Y. 1997) .................................................................49

*Metromedia Fiber Network, Inc. v. Lexent, Inc.*
   *(In re Metromedia Fiber Network, Inc.),*
   290 B.R. 487 (Bankr. S.D.N.Y. 2003)............................................................23

*Montana-Dakota Util. Co. v. Northwestern Public Serv. Co.,*
   341 U.S. 246 (1951)................................................................................. 44-45

*National Commc'ns. Assoc., Inc. v. AT&T Co.,*
   2001 WL 99856 (S.D.N.Y. Feb. 5, 2001).......................................41, 46, 47, 48

*National Coop. Ref'y Assoc. v. Rouse,*
   60 B.R. 857 (D. Colo. 1986)..........................................................................30

*Nevada Power Co.,*
   111 F.E.R.C. ¶ 61,111 (2005) ........................................................................22

*New Orleans S.S. Assoc. v. Placquemines Port Harbor & Terminal Dist.,*
   816 F.2d 1074 (5th Cir. 1987) .......................................................................19

*New York State Elec. & Gas Corp. v. New York State Indep. Sys. Operator,*
   168 F. Supp. 2d 23 (N.D.N.Y. 2001)..............................................................46

*New York v. Berry Estates, Inc. (In re Berry Estates, Inc.),*
   812 F.2d 71 (2d Cir. 1987)............................................................................31

# TABLE OF AUTHORITIES (cont'd)

Page(s)

*Pan Am. Petrol. Corp. v. Superior Ct.,*
  366 U.S. 656 (1961)...........................................................................................20

*Pennzoil Co. v. FERC,*
  645 F.2d 260 (5th Cir. 1981) ...............................................................20. 21, 22

*PBGC v. LTV Corp.,*
  875 F.2d 1008 (2d Cir. 1989) rev'd, 496 U.S. 633 (1990)..................................32

*Port Jefferson Station Automobile Collision Corp. v. Bimco Indus., Inc.
  (In re Bimco Indus., Inc.),*
  124 B.R. 623 (E.D.N.Y. 1991) ...........................................................................25

*PPL Mont., LLC,*
  96 F.E.R.C. ¶ 61,313 (2001) ..............................................................................22

*Price & Pierce Int'l, Inc. v Spicer's Int'l Paper Sales, Inc.,*
  50 B.R. 25 (S.D.N.Y. 1985)................................................................................30

*Public Util. Dist. No. 1 of Snohomish Cty., Wash. v. FEMA,*
  371 F.3d 701 (9th Cir. 2004) .............................................................................19

*Public Serv. Co. of N.H. v. N.H. Elec. Coop., Inc.,*
  Dkt. No. EL91-6-000, 1991 FERC LEXIS 689 (F.E.R.C. April 4, 1994).........................22

*Public Util. Dist. No. 1 of Snohomish Cty.,*
  No. EL05-139-000, 2006 WL 1757334 (June 28, 2006)....................................33

*Reiter v. Cooper,*
  507 U.S. 258 (1993)..................................................................................... *passim*

*Robert Lewis Rosen Assocs., Ltd. v. Webb,*
  2003 WL. 22801698 (S.D.N.Y. Nov. 24, 2003)................................................50

*Schaffer ex rel. Lasersight, Inc. v. CC Inv., LDC,*
  286 F. Supp. 2d 279 (S.D.N.Y. 2003).................................................................26

*Sears Roebuck & Co. v. San Diego Cty. Dist. Council of Carpenters,*
  436 U.S. 180 (1978).............................................................................................42

*Shimer v. Fugazy (In re Fugazy Exp. Inc.),*
  124 B.R. 426 (S.D.N.Y. 1991)........................................................................ 30-31

*Skelly Oil Co. v. Phillips Petrol. Co.,*
  339 U.S. 667 (1950)............................................................................................20

## TABLE OF AUTHORITIES (cont'd)

Page(s)

*Southern Co. Services, Inc.*,
  Dkt. Nos. ER41-150-006 & ER91-570-005
  1992 FERC LEXIS (F.E.R.C. Dec. 21, 1992) ....................................................................19

*T.I.M.E. Inc. v. United States*,
  359 U.S. 464 (1959) ...........................................................................................................44

*Transouth Fin. Corp. v. Sharon (In re Sharon)*,
  234 B.R. 676 (B.A.P. 6th Cir. 1999) ................................................................................25

*United States v. Inslaw*,
  932 F.2d 1467 (D.C. Cir. 1991) ........................................................................................27

*United Gas Pipeline Co. v. Mobile Gas Serv. Co.*,
  350 U.S. 332 (1956) ...........................................................................................................20

*United Illuminating Co. v. Enron Power Mktg., Inc.*,
  2003 WL. 22171695 (S.D.N.Y. Sept. 22, 2003) ..................................................................6

*United States v. Jones*,
  763 F.2d 518 (2d Cir. 1985) ..............................................................................................41

*United States v. Pikna*,
  880 F.2d 1578 (2d Cir. 1989) ......................................................................................20, 48

*University Med. Ctr. v. Sullivan (In re Univ. Med. Ctr.)*,
  973 F.2d 1065 (3d Cir. 1992) ............................................................................................31

*Volkswagen of Am., Inc. v. Dan Hixson Chevrolet Co.*
  *(In re Dan Hixson Chevrolet Co.)*,
  12 B.R. 917 (Bankr. N.D. Tex. 1981) ..........................................................................35-36

*Wagner & Brown v. ANR Pipeline Co.*,
  837 F.2d 199 (5th Cir. 1988) ............................................................................................46

*Yankee Gas Servs. Co. v. Conn. Light & Power Co.*,
  1998 WL 698763 (D. Conn. Mar. 16, 1998) ....................................................................24

## STATUTES AND OTHER AUTHORITIES

*Energy Policy Act of 2005*, Pub. L. No. 109-58, § 1290, 119 Stat. 594, 983-84 (Aug.
  8, 2005) ...........................................................................................................................7, 9

18 C.F.R. s18 C.F.R. § 385.708 ..............................................................................................19

## TABLE OF AUTHORITIES (cont'd)

Page(s)

11 U.S.C. § 362 .................................................................................................... *passim*

11 U.S.C. § 362(a)(1) ...................................................................................................25

11 U.S.C. § 362(b)(3) ...................................................................................................25

11 U.S.C. § 541(a)(1) ...................................................................................................26

11 U.S.C. § 541(a)(7) ...................................................................................................26

16 U.S.C. § 824d(e) ......................................................................................................21

28 U.S.C. § 1334(e) ........................................................................................................4

Andrew S. Katz, *Using the EEI-NEM Master Contract to Manage
    Power Marketing Risks*,
    21 Energy L.J. 269 (2000) ....................................................................................21

Paula K. Knippa, *Primary Jurisdiction Doctrine and the Circumforaneous Litigant*,
    85 Tex. L. Rev. 1289, 1301 (2007)......................................................................45

## PRELIMINARY STATEMENT

Every issue presented on this appeal effectively was decided by this Court's August 31, 2006 decision. *Enron Power Mktg. Inc. v. Luzenac Am. Inc. (In re Enron Corp.)*, Nos. OS Civ. 9244, 05 Civ. 10129, 2006 WL 2548453 (S.D.N.Y. Aug. 31, 2006) (the "August 31, 2006 Decision"). Public Utility District No. 1 of Snohomish County ("Snohomish") appeals from two orders issued below by United States Bankruptcy Judge Arthur J. Gonzalez. The first order, dated October 26, 2006, found that Snohomish had violated the automatic stay by petitioning the Federal Energy Regulatory Commission ("FERC") to hold Enron Power Marketing, Inc. ("EPMI") in contempt for seeking judgment in the Bankruptcy Court on its claim for a termination payment. The second order, dated March 17, 2007 (and based on an opinion dated March 9, 2007), (1) dismissed EPMI's adversary complaint and directed that EPMI's state law contract claim for a termination payment be arbitrated, as Snohomish had demanded; and (2) refused to stay EPMI's adversary proceeding pending FERC's determination of Federal Power Act (the "FPA") issues in the Gaming and Partnership Proceeding.

While Snohomish gives lip service to this Court's August 31, 2006 Decision and asserts that it will not reargue its losing contentions previously advanced in this Court (Brief of Appellant, Snohomish, at 3, 6),[1] every argument it makes on this appeal assumes that the Court's August 31, 2006 Decision was never rendered. First, the Bankruptcy Court's automatic stay prohibits non-debtor parties from seeking to obtain possession of or exercise control over property of EPMI's estate, such as EPMI's contractual right to collect a termination payment, by initiating legal proceedings in any forum other than the Bankruptcy Court. Had section 1290 of the Energy Policy Act of 2005, commonly referred to as the "Cantwell Amendment," stripped

---

[1] Hereafter cited as "Sno. Br. at __."

the Bankruptcy Court of jurisdiction over state-law contract claims and transferred that jurisdiction exclusively to FERC, then Snohomish's initiation and continuation of FERC proceedings against EPMI would have been permitted.  Once this Court determined, however, that the Cantwell Amendment does not deprive the Bankruptcy Court of its preexisting jurisdiction over EPMI's state law contract claims being prosecuted in the adversary proceeding, and does not make FERC the exclusive forum for the determination of such claims, then the automatic stay prohibited Snohomish from litigating those state law issues at FERC, despite Snohomish's now labeling such litigation as "defensive" only.  (Sno. Br. at 22-26).

Similarly, the assertion that FERC's June 28, 2006 Order (the "June 28, 2006 Order") (and thus Snohomish's October 2006 petition to FERC seeking to hold EPMI in contempt) fell within the police power exception to the automatic stay also is foreclosed by this Court's August 31, 2006 Decision.  Snohomish builds its entire position on the faulty assumption that the June 28, 2006 Order represented an exercise by FERC of its regulatory authority under the FPA.  (Sno. Br. at 26-33).  But this Court expressly rejected that view of the June 28, 2006 Order, relying instead on FERC's own statements therein that it was solely deciding state law and not applying the FPA.  *See Luzenac*, 2006 WL 2548453, at *15.

Snohomish also contends that, if the June 28, 2006 Order is not void, it precludes EPMI from seeking the Termination Payment in the Bankruptcy Court, notwithstanding this Court's August 31, 2006 Decision.  (Sno. Br. at 34-61).  But it is manifestly clear that, once this Court ruled that the Cantwell Amendment does not strip the Bankruptcy Court of jurisdiction over state law issues, the June 28, 2006 Order was not only void but void *ab initio* – as the Bankruptcy Court correctly ruled below.  Accordingly, the void FERC order has no effect of any kind, much less preclusive effect.

Finally, Snohomish asserts that the Bankruptcy Court should have deferred to FERC under the doctrine of "primary jurisdiction." (Sno. Br. at 41-50). Despite Snohomish's lack of standing to raise it here, this argument has no more merit than the "deferral" argument this Court pointedly rejected in its August 31, 2006 Decision. *See Luzenac*, 2006 WL 2548453, at *15. Snohomish's position on primary jurisdiction reflects a fundamental misunderstanding of that doctrine. Under any application of that doctrine, the Bankruptcy Court's rejection of any deference to FERC should be affirmed.

## STATEMENT OF ISSUES

1.    Did the Bankruptcy Court properly conclude that Snohomish violated the automatic stay contained in Bankruptcy Code § 362(a) by filing against EPMI a FERC petition raising the same state-law contract issues that impacted property of a debtor's estate and had been pending for over two years in the Bankruptcy Court?

2.    Did the Bankruptcy Court properly conclude that the police power exception to the automatic stay contained in 11 U.S.C. § 362(b)(4) does not apply to petitions filed by a private party for the purpose of obtaining an adjudication of purely state law contract issues?

3.    Can the June 28, 2006 Order have any preclusive effect when it is void *ab initio*?

4.    Where the Bankruptcy Court granted below Snohomish's primary requested relief to dismiss EPMI's claim in favor of arbitration, does Snohomish have standing to appeal the Bankruptcy Court's ruling rejecting Snohomish's alternative request for relief that a stay of bankruptcy proceedings in favor of a future potential FERC decision adverse to EPMI?

5.    Did the Bankruptcy Court abuse its discretion in ruling that "primary jurisdiction" did not require it to defer to FERC before considering EPMI's summary judgment motion and Snohomish's substantive motions?

## FACTS

### A.    The Enron Chapter 11 Cases

On December 2, 2001, Enron Corporation and many of its subsidiaries and affiliates (collectively, the "Debtors"), including EPMI, filed bankruptcy petitions in the Southern District of New York.   Pursuant to 28 U.S.C. § 1334(e), the district court and its adjunct, the Bankruptcy Court, acquired exclusive jurisdiction over the property of the bankruptcy estate, including EPMI's contracts and litigation claims.

The Debtors' cases were, when commenced, the largest bankruptcy filing in U.S. history.   The Herculean tasks of maximizing the Debtors' value and creditor recoveries; of treating all parties fairly; and of resolving a multitude of conflicting claims and demands, fell to Judge Gonzalez, who, on July 15, 2004, confirmed a chapter 11 plan of reorganization for the Debtors.   Neither EPMI nor any of the Debtors continue as going concerns.   Rather, under the confirmed plan, they are collecting and liquidating their assets for distribution to creditors.   Since confirmation, nearly all of the Debtors' assets (worth billions) have been distributed to creditors.

### B.    EPMI's Trading Contracts

One of the Debtors' largest assets was a multi-billion dollar portfolio of contracts belonging to Enron's energy-trading subsidiary, EPMI, which bought and sold large quantities of power with utility companies, municipalities, retail purchasers, and other power traders.   As is standard in the industry, these contracts provided that, if the contract were terminated before the end of the contract term, a "termination payment" would be owed by one of the parties, without regard to which party had terminated or defaulted.   If, at the time of termination, the market price

-4-

were higher than the contract price, the seller would owe the buyer the termination payment. If the market price were lower, the buyer would owe the seller the termination payment. As is also standard in the industry, these contracts provided that they are governed by state law. Prior to Enron's chapter 11 cases, EPMI had entered into such a contract – known as the Master Power Purchase and Sale Agreement (the "MPPSA") – with Snohomish, providing that New York state law governed.

After Enron filed for bankruptcy, EPMI and other subsidiaries commenced collection of the payments owed to them under terminated contracts. While in the vast majority of cases a consensual liquidation of a termination payment obligation was achieved, EPMI and its affiliated debtors had to commence adversary proceedings seeking termination payments against 74 counterparties to commodity trading contracts (the "Trading Cases"). EPMI brought all 74 Trading Cases in the Bankruptcy Court, pursuant to 28 U.S.C. § 1334.

### C.    EPMI's Complaint Against Snohomish

On January 31, 2003, EPMI filed a complaint in the United States Bankruptcy Court for the Southern District of New York against Snohomish as one of the Trading Cases. This complaint alleges that Snohomish violated several provisions of the bankruptcy code and breached the state law obligations imposed by the MPPSA by failing to pay EPMI a Termination Payment in the amount of at least $116,847,876, plus interest at rate specified in the contract.[2] *See Enron Power Mktg. Inc. v. Public Util. Dist. No. 1 of Snohomish Cty. (In re Enron Corp.)* Chapter 11 Case No. 01-10634, Adv. Proc. No. 03-2064 (Bankr. S.D.N.Y.) (Dkt. No. 1, Jan. 31, 2003).[3]

---

[2]    As of September 30, 2006, the total principal and interest due to EPMI was $178,499,653.

[3]    Hereafter, citations to pleadings and orders in the Adversary Proceeding appear as *EPMI v. Snohomish* (Adv. P. Dkt. No. ___).

On April 14, 2003, Snohomish filed a motion to dismiss EPMI's complaint or, in the alternative, to stay proceedings in favor of arbitration, which Snohomish asserted was mandated by the MPPSA. Motion, *EPMI v. Snohomish* (Adv. P. Dkt. No. 12, Jan. 31, 2003). Snohomish neither contested nor challenged the Bankruptcy Court's jurisdiction over – or ability to decide – matters relating to the MPPSA, except with respect to arbitration. Snohomish's motion was stayed pursuant to a Mediation Order entered *sua sponte* by the Bankruptcy Court on March 4, 2003, with respect to all Trading Cases. Order, *In re Enron Corp.*, Chapter 11 Case No. 01-16034 (Bankr. S.D.N.Y.) (Dkt. No. 9533, Mar. 5, 2003).[4]    Although numerous counterparties sought to escape the mediation process by moving to withdraw the reference of their adversary proceedings, seven district court judges (including this Court) denied these motions in ten separate opinions rendered in 2003-2004, all of which recognized the Bankruptcy Court's special expertise and unique ability to administer these matters uniformly and fairly. These opinions also recognized that the Bankruptcy Court was the proper forum to resolve EPMI's state law claims.[5]

On May 18, 2005, the Bankruptcy Court entered an Order granting EPMI's request for a limited modification of the Mediation Order. This Order modified the Mediation

---

[4]    Hereafter, citations to pleadings and orders in the main chapter 11 proceedings appear as *In re Enron Corp.* (Dkt. No. ___)

[5]    *Enron Power Mktg., Inc. v. Luzenac Am., Inc.,* No. 03 Civ. 1524 (S.D.N.Y. Mar. 25, 2004) (Preska, J.); *American Coal Co. v. Enron N. Am. Corp.,* No. 03 Civ. 1727 LTS (S.D.N.Y. June 25, 2003) (Swain, J.); *Enron Power Mktg., Inc. v. Holcim, Inc.,* No. 04 Civ. 509, 2004 WL 2149124, at \*5 (S.D.N.Y. Sept. 23, 2004) (Mukasey, J.); *Amerada Hess Corp. v. Enron Corp. (In re Enron),* 2004 WL 2149100, at \*3 (S.D.N.Y. Sept. 24, 2004) (Chin, J.); *Enron Corp. v. Belo Co. (In re Enron Corp.),* 317 B.R. 232, 235 (S.D.N.Y. Nov. 2, 2004) (Mukasey, J.); *Enron N. Am. Corp. v. Media Gen., Inc.,* No. 04 Civ. 2527, 2004 WL 1197243, at \*5 (S.D.N.Y. May 28, 2004) (Stein, J.); *Enron Power Mktg., Inc. v. Random House., Inc.,* No. 03 Civ. 9312 (S.D.N.Y. Jan. 28, 2004) (Swain, J.); *United Illuminating Co. v. Enron Power Mktg., Inc.,* 2003 WL 22171695 (S.D.N.Y. Sept. 22, 2003) (Cote, J.); *Nevada Power Co. v. Enron Power Mktg., Inc.,* Case No. 02-Civ-7981 (S.D.N.Y. Jan. 23, 24, 2003) (Cote, J.); *Enron Power Mktg., Inc. v. City of Santa Clara,* No. 01 Civ. 7964, 2003 WL 68036, at \*11 (S.D.N.Y. Jan. 8, 2003) (Baer, J.).

Order with respect to four of the Enron trading cases, including the instant case, by terminating the stay of litigation in those adversary proceedings.[6] Order, *EPMI v. Snohomish* (Adv. P. Dkt. No. 45, May 18, 2005).

On July 7, 2005, at EPMI's request, the Bankruptcy Court held a status conference with respect to the adversary proceeding. At the conference, EPMI informed the Bankruptcy Court that it wished to file a motion for summary judgment. Snohomish opposed EPMI's request, arguing that it would be impractical for Snohomish to have to address substantive issues before the Bankruptcy Court decided the motion to compel arbitration. Snohomish further argued that it would be improper for the Court to entertain summary judgment before the parties had a chance to engage in discovery. Transcript, *EPMI v. Snohomish* (Adv. P. Dkt. No. 46, July 10, 2005). On July 12, 2005, the Bankruptcy Court ruled that EPMI could file a motion for summary judgment and instructed EPMI and Snohomish to confer on a schedule for the arbitration motion and summary judgment motion.

The Bankruptcy Court's July 12, 2005 ruling notwithstanding, Snohomish's intractability made it impossible for EPMI to obtain agreement on a briefing schedule. Before EPMI could bring its motion before the Bankruptcy Court, two things occurred. First, Snohomish filed a petition with FERC, requesting that FERC determine whether the Termination Payment provisions of the MPPSA were enforceable under the FPA. Second, Congress enacted, and the President signed into law the "Cantwell Amendment." *See Energy Policy Act of 2005*, Pub. L. No. 109-58, § 1290, 119 Stat. 594, 983-84 (Aug. 8, 2005). The resulting dispute regarding that legislation halted further action in the adversary proceeding. That dispute

---

[6]    The other three Enron trading cases have been resolved by settlement.

culminated in this Court's August 31, 2006 Decision, which eliminated the Cantwell Amendment as an impediment to further proceedings in the Bankruptcy Court.

### D.    FERC'S Gaming And Partnership Proceeding

On August 4, 2004, 20 months *after* EPMI had filed its bankruptcy court adversary proceeding, Snohomish requested that FERC consider its termination-payment dispute with EPMI as part of FERC's pending "Gaming and Partnership Proceeding." That FERC proceeding had begun on June 25, 2003 (six months after the Snohomish adversary proceeding had commenced) and involved neither the specific Snohomish contract at issue here, nor EPMI's claim for a termination payment, or any state-law issue whatsoever.

When Snohomish sought to expand that FERC proceeding, EPMI moved to enforce the automatic stay against Snohomish. Although the Bankruptcy Court denied EPMI's automatic stay motion because it was not clear "as to precisely what Snohomish [was] requesting of FERC," Transcript and Decision at 19, *In re Enron Corp.* (Dkt. No. 27717, Apr. 19, 2005), it took the occasion to confirm the established boundaries between its jurisdiction and FERC's: "FERC has exclusive jurisdiction to ensure that the rates, terms and conditions set forth in the contracts affecting wholesale electric power transactions are just and reasonable"; *id.* at 10, but "Enron's rights under their agreement with Snohomish are property of the debtor's estate, and any interpretation issues concerning that contract are properly brought before [the bankruptcy] court." *Id.* at 14. To that end, the Bankruptcy Court held that "if FERC were to actually undertake to interpret the terms of the contract, any such action would be void *ab initio* absent relief from the automatic stay." *Id.* at 20.

On March 11, 2005, FERC indicated for the first time that the Gaming and Partnership Proceeding, already 20 months underway, would address disgorgement of termination payments owed by Snohomish. Nevertheless, in the same order, FERC stated that its

adjudication would be "subject to applicable bankruptcy restrictions." *El Paso Elec. Co.*, EL 02-113-007, 2005 FERC LEXIS 575 (F.E.R.C. Mar. 11, 2005). And, in May 2005, again reflecting the traditional division between FERC and courts, FERC clarified that it was *not* deciding the parties' state-law contract rights and that the Gaming and Partnership Proceeding "does not conflict with the bankruptcy court proceeding."

### E.    The Cantwell Amendment

After enactment of § 1290, EPMI successfully moved in this Court to withdraw the reference of Snohomish and four other adversary proceedings in this case in order for the district court to consider (a) the proper construction of § 1290 and (b) whether, if construed to oust the Bankruptcy Court of jurisdiction over EPMI's state law contract claims to collect the Termination Payment and to grant exclusive jurisdiction over such claims to FERC, the statute passes muster under the United States Constitution.[7] *EPMI v. Snohomish* (Adv. P. Dkt. No. 50, Nov. 23, 2005). Snohomish consented to the withdrawal of reference. The United States intervened before this Court as a defendant.

As noted above, just prior to the passage of § 1290, Snohomish had filed a petition with FERC, requesting that it determine whether the Termination Payment provisions of the MPPSA were enforceable under the FPA. Immediately after passage of § 1290, Snohomish amended its FERC petition to include a request that FERC exercise the jurisdiction purportedly granted under § 1290 to review and decide whether the Termination Payment provisions of the

---

[7]    EPMI also simultaneously moved to withdraw the reference in adversary proceedings against the City of Santa Clara ("Santa Clara"), Valley Electric Association, Inc. ("Valley Electric"), Metropolitan Water District of Southern California ("Metropolitan Water"), and Luzenac, Inc. Each of these proceedings raised the same statutory interpretation and constitutionality issues concerning the Cantwell Amendment. EPMI has since settled all claims with Santa Clara, Valley Electric and Metropolitan Water, but not with Luzenac.

MPPSA are enforceable against Snohomish under applicable state law.    Thus, Snohomish's amended petition placed before FERC exactly the same state law issues pending for well over two years in the Bankruptcy Court.[8]

**F.    FERC's June 28, 2006 Order Applying The Cantwell Amendment To Snohomish's Petition.**

On June 28, 2006, FERC issued an order granting in part, and denying in part, Snohomish's petition for relief from EPMI's Termination Payment claim.    With respect to its jurisdiction over the state law issues presented by the petition, FERC stated:

> The Commission would not typically rule on the contract issues raised by Enron's termination payment claim, or by Snohomish's petition, in which affirmative defenses relating to this claim are raised by Snohomish (including Snohomish's assertion that it was fraudulently induced to enter into the Agreement). *These claims and defenses require, for their resolution, the application of state law and do not otherwise require uniform interpretation with respect to the policies we are required to administer* [footnote omitted].    However, Snohomish's petition presents the Commission with a unique matter of first impression – the invocation of our exclusive jurisdiction, under section 1290 of the [Energy Policy Act of] 2005, to determine whether a requirement to make a termination payment for power not delivered is not permitted under a rate schedule (or contract under such a rate schedule) or is otherwise unlawful on the grounds that the contract is unjust and unreasonable or contrary to the public interest.    The Commission finds that, in this instance, *where it has been granted exclusive jurisdiction under section 1290* with respect to a termination payment claim, *it is both necessary and appropriate to consider* the parties' respective state law claims and defenses on the merits.

---

[8]    By seeking relief from FERC without either requesting a decision from the Bankruptcy Court that the automatic stay was inapplicable to the FERC action or seeking to lift the stay, Snohomish expressly assumed the risk that any ruling from FERC would later be deemed void *ab initio. See Chao v. Hospital Staffing Svs., Inc.*, 270 F.3d 374, 384-85 (6th Cir. 2001) ("Administrative proceedings before a federal agency may . . . be declared void *ab initio* if a court determines that the agency incorrectly determined that the stay did not bar the proceedings"), *rev'd* 270 F.3d 374 (6th Cir. 2001) (citation omitted).

*Public Util. Dist. No. 1 of Snohomish Cty., Wash.,* Dkt. No. EL05-139-000, 2006 WL 1757334, at \*27 (FERC June 28, 2006) (emphasis added).[9]

While FERC thus concluded, without analysis, in the June 28, 2006 Order that it had exclusive jurisdiction under the Cantwell Amendment to decide the state law issues presented by the parties, the Commission expressly deferred to this Court with respect to the constitutionality of the statute. Thus, FERC recognized that the Court could enter a ruling that would negate its action. *Id.* at 94.

With respect to the merits of the state law contract issues, FERC found that, under New York law, the MPPSA should be rescinded. Having decided the issue under state law, FERC determined that it did not have to decide whether the FPA precluded enforcement of the MPPSA, and accordingly, FERC did not decide any FPA issues under its "just and reasonable" and "public interest" standards. *Id.*[10] In a footnote, FERC added,

> Other entities have also filed petitions pursuant to section 1290. *See City of Vernon, California,* ... ; *Luzenac America, Inc.,* ... ; and *Ash Grove Cement Co.,* .... The Commission is acting on each of these petitions in orders issued contemporaneous with this order. Only in this case, however, do we determine that the underlying contract is eligible for review under section 1290.[11]

*Id.* at 2 n.5.

---

[9]    A copy of June 28, 2006 Order is attached to Appellant's Brief as Exhibit 4.

[10]    EPMI filed an appeal under 28 U.S.C. § 1331 in this court from the June 28, 2006 Order. That appeal is still pending, but stayed, pursuant to stipulation of the parties, subject to the Second Circuit decision on the § 1292(b) appeal from this Court's August 31, 2006 Decision.

[11]    To date, however, FERC has neither ordered Luzenac's § 1290 petition dismissed nor taken any other action regarding Luzenac.

### G. FERC's Simultaneous Refusal To Apply Cantwell Amendment In The *Mirant* Case

Significantly, on the day FERC issued its June 28, 2006 Order on Snohomish's FERC petition, FERC came to a dramatically opposite conclusion on a virtually identical petition that was not covered by the Cantwell Amendment. FERC dismissed a petition by the City of Vernon against Mirant Americas Energy Marketing, L.P. ("Mirant"). After determining that Mirant did not fit the definition of an energy company subject to the Cantwell Amendment (because EPMI is the only company that fits the definition), FERC applied its "Arkla v. Hall" test for determining whether it would hear the state law issues in the absence of the perceived compulsion of the Cantwell Amendment. Deciding that the Vernon petition did not meet the Arkla v. Hall test, FERC stated that it "possesses no special expertise over the contractual issues raised by Vernon's petition, including Vernon's allegations regarding Mirant's insolvency, creditworthiness, and alleged fraud in inducing Vernon to enter into the Agreement. These issues, rather, turn on standard contract and/or tort principles and do not address matters arising under the FPA." *City of Vernon*, Dkt. No. EL06-3-000, 2006 WL 1757331, at *11 (June 28, 2006); *see generally Arkansas La. Gas Co. v. Hall*, Dkt. No. R176-28, 79 WL 167678, at *3 (May 18, 1979).

### H. This Court's Ruling On The Construction And Constitutionality Of The Cantwell Amendment

On August 31, 2006, this Court issued an Opinion and Order, ruling that the Cantwell Amendment was merely clarifying legislation, and did not strip jurisdiction over state law claims from the Bankruptcy Court and grant exclusive jurisdiction over such claims to FERC.[12] Specifically, this Court ruled in its August 31, 2006 Decision:

---

[12]  A copy of this Court's August 31, 2006 Decision is annexed hereto as Exh. 1.

> For the reasons set out above, Defendants' cross-motions to dismiss or stay the adversary proceedings ... and Defendant *Luzenac*'s motion to transfer the action to FERC are denied. EPMI's motions for a determination of the continuing jurisdiction of the Bankruptcy Court, as opposed to FERC, over this adversary proceeding in light of the enactment of the Cantwell Amendment are granted.

> Because EPMI's motions to withdraw the reference to the [B]ankruptcy [C]ourt were for the limited purpose of construing the Cantwell Amendment and, thus, determining the continuing jurisdiction of the [B]ankruptcy [C]ourt on this issue *and I have determined that jurisdiction over the state-law contract issues lies with the Bankruptcy Court,* this Order resolves the two above-captioned withdrawals of the adversary proceedings for a special purpose. Accordingly, the Clerk of the Court shall mark those withdrawals closed and all pending motions denied as moot.

*Luzenac*, 2006 WL 2548453, at *17 (emphasis added). This Court's August 31, 2006 Decision eliminated the Cantwell Amendment as an impediment to further proceedings in the Bankruptcy Court.

This Court also concluded that serious constitutional issues would be presented were the Cantwell Amendment read to strip the Bankruptcy Court of jurisdiction. In particular, this Court suggested that under such a construction, the Cantwell Amendment would run afoul of both the Bankruptcy Clause requirement for uniform laws and the Separation of Powers doctrine. *Id.* at **14-17. With respect to the Separation of Powers issue, this Court specifically referred to the inappropriate outside political pressures brought to bear on the entire FERC process that resulted in Commissioner Brownell's separate opinion and mere "present" vote. In regard to those troubling aspects of the atmosphere surrounding the FERC decision – raising concerns that FERC had not truly reached an independent decision uninfluenced by untoward political pressure to rule against EPMI, this Court observed:

> [T]here is reason to believe that . . . coercive influence was exerted here. FERC Commissioner Nora Mead Brownell voted "present"

rather than participate in the June 28, 2006 Order of the EPMI-Snohomish proceeding . . . In explaining that vote Commissioner Brownell wrote:

> "The adjudicatory proceedings that Snohomish has pending before the Commission have been the subject of continuous statements, letters and press releases from non-parties regarding what is the appropriate outcome, questioning the competency and fairness of the decision-makers, and criticizing the rules of procedure that govern every adjudicatory proceeding. The Commission's order on the Enron-Trial Staff Settlement itself, issued concurrently, recognizes that the external influence on the decisional processes of the Commission remains unabated. I am concerned whether we can truly discount what has been said. The inordinate amount of intrusion and the direct focus on a particular outcome in this matter have now reached the point where I believe the most appropriate course of action for me is to simply vote 'present'."

*Id.* at **14-15 (*citing* the June 28, 2006 Order).

Snohomish's appeal pursuant to 28 U.S.C. § 1292(b) is being briefed. Oral argument has not yet been scheduled.

## I.    EPMI's Summary Judgment Motion And Snohomish's Renewed Motion To Compel Arbitration

On October 5, 2006, EPMI filed a summary judgment motion in the adversary proceeding with respect to its breach of contract claim against Snohomish. *EPMI v. Snohomish* (Adv. P. Dkt. No. 57, Oct. 5, 2006). Specifically, EPMI moved the Bankruptcy Court for an order that Snohomish had breached the clear and express terms of the MPPSA and is obligated to pay the Termination Payment due and owed to EPMI under the MPPSA.

By letter dated October 6, 2006, Snohomish requested that the Bankruptcy Court stay consideration of EPMI's Summary Judgment Motion pending the resolution of the appeal to the Second Circuit. By order dated October 11, 2006, the Bankruptcy Court denied Snohomish's motion to stay. *EPMI v. Snohomish* (Adv. P. Dkt. No. 62, Oct. 11, 2006). Snohomish then sought to withdraw the reference of the adversary proceeding from the Bankruptcy Court for the

sole purpose of holding the case in abeyance pending the interlocutory appeal.  On December 13, 2006, this Court denied the request to withdraw the reference, holding that the elements for withdrawal had not been established and that Snohomish had not satisfied the standards for a stay pending appeal.

### J.    Snohomish's Second FERC Petition

One day after EPMI filed its summary judgment motion, Snohomish filed with FERC a new Petition – without having asked the bankruptcy court to lift the automatic stay imposed under 11 U.S.C. § 362.  In the new petition, Snohomish asked FERC to issue an order that (1) revived the erroneous meaning Snohomish and FERC read into the Cantwell Amendment; (2) overrode the August 31, 2006 Decision as if it had not been issued; and (3) stripped the Bankruptcy Court of jurisdiction to decide the contractual Termination Payment issue.  Specifically, the new petition asked FERC to issue an order declaring that EPMI's attempt to enforce the Termination Payment provisions of the MPPSA and collect a Termination Payment from Snohomish in the Bankruptcy Court was both an act of contempt under and a violation of FERC's June 28, 2006 Order.

### K.    EPMI'S Motion To Enforce The Automatic Stay

On October 12, 2006, EPMI moved the Bankruptcy Court to enter an order (1) enforcing the automatic stay; (2) enjoining Snohomish from further prosecution of its October 6, 2006 petition before FERC; (3) ordering Snohomish to withdraw that petition forthwith; and (4) enjoining Snohomish from litigation of the state law issues in this case before any other tribunal.  *EPMI v. Snohomish* (Adv. P. Dkt. No. 80, Oct. 12, 2006).  Following extensive briefing, the Bankruptcy Court heard oral argument on the issue on October 26, 2006.

**L.    The Bankruptcy Court's Opinion And Order Finding Snohomish Violated The Automatic Stay**

Because Snohomish had argued that both the FERC June 28, 2006 Order and the contempt petition were not subject to the automatic stay, the Bankruptcy Court was required to rule on both issues.   On October 26, 2006, the Bankruptcy Court ruled that, based upon this Court's August 31, 2006 Decision, Snohomish had violated the automatic stay provisions of the Bankruptcy Code.  *See Enron Power Mktg., Inc. v. Public Util. Dist. No. 1 of Snohomish Cty. (In re Enron Corp.)*, 2006 WL 3140640, at *1 (Bankr. S.D.N.Y. Oct. 30, 2006).   The Bankruptcy Court recognized FERC's exclusive jurisdiction under the FPA to determine regulatory issues, and noted that, "had the stay been lifted, FERC could have exercised its concurrent jurisdiction to adjudicate the state law contractual claims."   Snohomish, however, had not obtained the requisite relief from the automatic stay to have those issues considered by FERC.  *Id.* at *5.

In determining that Snohomish violated the automatic stay, the Bankruptcy Court held that the Termination Payment sought by EPMI "is [the] property of the Debtors' estate. Thus, [Snohomish's] efforts to preclude EPMI from adjudicating their state law contract rights before [the Bankruptcy Court] is [a] violation of the automatic stay."  *Id.* at *4.  The Bankruptcy Court expressly considered, and expressly rejected, Snohomish's contention that its initiation of the FERC proceeding did not violate the automatic stay, because the FERC proceeding was "defensive" in nature.  Specifically, the Bankruptcy Court held that although, "ordinarily, a party may defend against a claim brought against it without seeking relief from the automatic stay. however, to avoid the application of the automatic stay, any defense, based upon state-contractual law, which the Utility seeks to interpose to counter EPMI's claim in this Court should be presented in the proceeding in this Court, not in a separate proceeding in another forum that is precluded by the automatic stay from proceeding with the claim itself."  *Id.* at *5.

The Bankruptcy Court also rejected the contention that Snohomish's activities at FERC were permitted because they were governed by the police and regulatory exception to the automatic stay embodied in 11 U.S.C. § 362(b)(4), holding that "the determination of state law contract issues are not within FERC's regulatory police power." *Id.* at *4.

Accordingly, the Bankruptcy Court determined that Snohomish's petitions to FERC violated the automatic stay, and that the June 28, 2006 Order was void *ab initio* and without any binding legal effect.

### M.    The Bankruptcy Court's Ruling On EPMI's Summary Judgment Motion And Snohomish's Motion To Dismiss

On November 14, 2006, Snohomish responded to EPMI's pending motion for summary judgment by (1) renewing its previously filed motion to dismiss on grounds of mandatory arbitration; (2) requesting that the Bankruptcy Court defer any further action on the adversary proceeding pending conclusion of the FERC Gaming and Partnership proceedings under the putative doctrine of "primary jurisdiction"; and (3) as an alternative to compelling arbitration, cross-moving for summary judgment in its favor. *EPMI v. Snohomish* (Adv. P. Dkt. No. 80, Nov. 14, 2006).

In March, 2007, the Bankruptcy Court rendered an opinion and issued the second order from which Snohomish appeals.  The Bankruptcy Court denied EPMI's motion for summary judgment and granted Snohomish's motion to dismiss the adversary proceeding, both grounded on the MPPSA provision requiring arbitration. *Enron Power Mktg., Inc. v. Public Util. Dist. No. 1 of Snohomish Cty. (In re Enron Corp.)*, 346 B.R. 48 (Bankr. S.D.N.Y. Mar. 9, 2007). It determined that the MPPSA's arbitration clause should be enforced "and the state law claims raised in this adversary proceeding arbitrated." *Id.* at 495.   While granting Snohomish's requested relief, the Bankruptcy Court applied a multi-pronged test to reject Snohomish's

alternative argument that the doctrine of primary jurisdiction required a deferral of the adversary proceeding pending further FERC action in the pending Gaming and Partnership Proceeding. *Id.* at 507. The Bankruptcy Court retained jurisdiction for the purpose of, among other things, enforcing any arbitration award.

### N. EPMI Promptly Commenced Arbitration Following The Bankruptcy Court's March 2007 Decision And Order Compelling Arbitration

Informed by Judge Gonzalez's March 9 and 17, 2007 decision and order, EPMI commenced arbitration against Snohomish to enforce the MPPSA and collect the Termination Payment due EPMI thereunder. Three arbitrators (all retired federal judges) were appointed.[13]

On May 18, 2007, the arbitration panel: (1) denied Snohomish's motion to stay; (2) directed both parties to complete the filing of summary judgment briefs no later than July 2, 2007; (3) scheduled a July 16, 2007 hearing on the parties' cross-motions for summary judgment; and (4) directed the parties to hold August 6-19, 2007 for further hearings. An award by the panel – the forum Snohomish selected to make the decision – will resolve the parties' contract dispute.

### O. Administrative Law Judge Issues Initial Decision In FERC's Gaming And Partnership Proceeding Partially In Favor Of Snohomish

On June 21, 2007, a FERC administrative law judge entered an initial decision in the Gaming and Partnership proceeding that concluded, under the FPA's "just and reasonable" standards, that EPMI must disgorge all unjust profits derived from the Western markets, including any termination payment due from Snohomish. *Enron Power Mktg, Inc.*, Dkt. No. EL03, 2007 WL 1791179 (FERC June 21, 2007). The initial decision has no current force or

---

[13]    The arbitration panel consists of former Third Circuit Judge Timothy Lewis, former Southern District of New York Judge John Martin and Former District of Oklahoma Judge Layn Philips.

effect on these appeals or elsewhere, because it is the functional equivalent of a master's report and does not become final unless and until the Commission finally adopts it.   18 C.F.R. § 385.708; *see Inter-City Gas Corp. v Boise Cascade Corp.*, 845 F.2d 184 (8th Cir. 1988), *rehr'g denied*.  Accordingly, like all other initial decisions of administrative law judges, the decision carries no preclusive effect.[14]   Moreover, the decision itself makes clear that its scope has nothing to do with the Cantwell Amendment or with the issues now being involved on this appeal and now being arbitrated.  *Enron Power Mktg.*, 2007 WL 1791179, at *7, *49, *60.[15] Notably, that initial decision, while directing provisionally that EPMI must disgorge any termination payment, does not prevent EPMI from continuing to prosecute its claims to collect, or from collecting such payments.

## STANDARD OF REVIEW

EPMI agrees that determination of the scope of the automatic stay and application of the doctrine of preclusion are questions of law subject to *de novo* review.   Although incorrectly couched in terms of the doctrine of "primary jurisdiction" by Snohomish, the Bankruptcy Court's denial below of a stay is reviewed under the abuse of discretion standard.

---

[14]   *See IBEW, Local 532 v. Brink Constr. Co.*, 824 F.2d 207, 213 & n.10 (9th Cir. 1987); *New Orleans S.S. Ass'n v. Placquemines Port Harbor & Terminal Dist.*, 816 F.2d 1074, 1077 (5th Cir. 1987); *BP West Coast Prods., LLC v. SFPP, L.P.*, Dkt. Nos. 0R07-3-000 & 0R07-6-000; 2007 FERC LEXIS 586 (F.E.R.C. Mar. 29, 2007); *Southern Co. Servs., Inc.*, Dkt. Nos. ER91-150-006, ER91-570-005, 1992 FERC LEXIS 2670, at *29 n.56, n.59 (F.E.R.C. LEXIS Dec. 21, 1992), *reh'g denied*, Dkt. Nos. ER91-150-010-ER91-570-007, 1993 FERC LEXIS 938 (F.E.R.C. May 20, 1993) (1993).  *Accord, Public Util. Dist. No. 1 of Snohomish Cty., Wash. v. FEMA*, 371 F.3d 701 (9th Cir. 2004) (rejecting Snohomish's contention that FEMA initial decision had preclusive effect).

[15]   Snohomish previously filed a general unsecured claim for disgorgement in EPMI's Chapter 11 case. EPMI objected to that claim on grounds that any disgorgement ultimately ordered by FERC would be a penalty -- hence it must be subordinated to the claims of other EPMI general unsecured and innocent creditors.  This question will be resolved in the bankruptcy court, which has retained jurisdiction.

*See Reiter v. Cooper*, 507 U.S. 258, 268 (1993); *United States v. Pinkina,* 880 F.2d 1578, 1584 (2d Cir. 1989).

## ARGUMENT

Before turning to the Bankruptcy Court's correct orders below, it is important that this Court not be sidetracked by Snohomish's self-serving panorama concerning FERC's putative FPA regulatory scheme. In marked contrast to the regulatory schemes in other industries, the regulatory scheme for gas and electricity contracts "recognizes the need for private contracts of varying terms," *United Gas Pipeline Co. v. Mobile Gas Serv. Co.*, 350 U.S. 332, 343 (1956), and, "except as specifically limited by the [statute]," gives parties rights to contract that are "no different from those they would possess in the absence of the [statute]."[16] *Id.* at 343. Wholesale buyers and sellers of electricity are free to negotiate private contracts, which "may then be filed and begin to operate, *de facto and de jure*, as the rate schedule." *Boston Edison Co. v. FERC*, 856 F.2d 361, 370-72 (1st Cir. 1988). No affirmative FERC approval is required. *Id.* at 368.

It is well-settled, therefore, that actions to enforce electricity contracts arise under state law and normally must be brought in state court. *See, e.g., Skelly Oil Co. v. Phillips Petrol. Co.*, 339 U.S. 667, 672 (1950) (suits to enforce gas contracts arise "under the State law governing the contracts").[17] Courts and FERC have both held that such contracts are not

---

[16] Because the regulatory schemes for gas and electricity are nearly identical, the "established practice is to cite "interchangeably decisions interpreting the pertinent sections of [the FPA and the Natural Gas Act]." *Arkansas La. Gas Co. v. Hall*, 453 U.S. 571, 577 n.7 (1981).

[17] *See also Pennzoil Co. v. FERC*, 645 F.2d 360, 384 (5th Cir. 1981) ("The NGA was carefully fashioned to exert federal control only in a limited and well-defined area. It is well-established that contractual claims between parties to a natural gas contract do not arise under the NGA for purposes of federal question jurisdiction"), *cert. denied*, 454 U.S. 1142 (1982) (collecting cases); *accord Pan Am. Petrol. Corp. v. Superior Ct.*, 366 U.S. 656 (1961); *Airco Alloys Div. v. Niagara Mohawk Power Corp.*, 65 A.D.2d 378, 383-86 (4th Dep't 1978).

governed by federal law, but by the state law "that would govern the parties' dealings were there no regulation at all of the contract's subject matter." *Pennzoil*, 645 F.2d at 387; *Golden Spread Elec. Coop., Inc.*, Dkt. No. ER87-396-001, 1987 WL 118287, at **3-4 (F.E.R.C. Sept. 29, 1987).

Here, EPMI's contract with Snohomish is based on the Edison Electric Institute model agreement, which was drafted by industry representatives who provided for New York law to govern to obtain the benefit of New York statutes and court decisions and "generally because it is a very pro-commercial transactions state." Andrew S. Katz, *Using the EEI-NEM Master Contract to Manage Power Marketing Risks*, 21 ENERGY L.J. 269, 294 (2000); A105-155; 156-206. The parties' contracts are therefore private state-law agreements, not federal "law" or "the "equivalent of a federal regulation," as Snohomish incorrectly contends.

While FERC can order prospective modifications of contract rates or terms that violate the FPA, FERC has no authority to interfere with parties' rights to negotiate contract terms in the first instance. *Atlantic City Elec. Co. v. FERC*, 295 F.3d 1, 10 (D.C. Cir. 2002) (collecting cases). FERC's limited authority to modify contracts is found in FPA sections 205 and 206: FERC can *reject* certain newly filed contract provisions if they are not "just and reasonable," 16 U.S.C. § 824d(e); and it can *modify* "unjust, unreasonable, unduly discriminatory or preferential" terms, *id*. at 824e(a). The Supreme Court's "*Mobile-Sierra* doctrine" permits such modifications, however, only if required by the "public interest," *FPC v. Sierra Pac. Power Co.*, 350 U.S. 348, 355 (1956), which "is much more restrictive than the just and reasonable standard of section 205 of the Act." *Atlantic City*, 295 F.3d at 14.

Sections 205 and 206 do not authorize FERC adjudication of state-law contract claims or issues unless they affect FERC's determination whether contract provisions are unlawful under the FPA. *See Arkansas La. Gas*, 79 WL 167678, at **1-3 (FERC "should intrude no further into doctrines of state contract law than necessary to carry out its

responsibilities under the [statute]").  Thus, FERC normally considers state-law matters only to resolve FPA issues, not state-law breach-of-contract claims like EPMI's.  *See, e.g., Pennzoil*, 645 F.2d at 380 (because, "[u]nder the Mobile-Sierra doctrine, contractual authority is necessary for a seller to make a valid rate increase filing . . . the Commission has 'ancillary' jurisdiction to interpret the contract to find whether that contractual authority exists"); *Golden Spread*, 1987 WL 118287, at **3-4 (FERC decided state-law contract assignment issue to determine whether a party qualified as a "public utility" under the FPA).

Moreover, FERC typically finds that state law breach of contract issues do not impact its regulatory responsibilities and holds that it lacks expertise over breach-of-contract claims, which are better decided by courts, consistently dismissing damages claims in particular because it lacks power to award contract damages.[18] *See Yankee Gas Servs. Co. v. Connecticut Light & Power Co.*, No. Civ. 3-97-CV-1025, 1998 WL 698763, at *4 (D. Conn. Mar. 16, 1998). FERC instead has a longstanding policy "not to unilaterally intervene in matters pending in court absent special or extraordinary circumstances" since, if the court has not asked for FERC's assistance, any ruling the Commission might issue "would be advisory in nature and would not be binding on the court."  *Amoco Prod. Co.*, Dkt. Nos. C169-491-001, C169-491-002, 1988

---

[18]   *E.g., In re Nevada Power Co.*, Dkt. No. EL04-90-001, 2005 WL 914179, at *3 (F.E.R.C. April 20, 2005) 61,616 (2005) ("Construing the contract's provisions and inquiring into the parties' intent is a straightforward matter of contract interpretation that is better left to a court"); *PPL Mont., LLC*, Dkt. No. ER01-2633-000, 2001 FERC LEXIS 2387, at *13, (F.E.R.C. Sept. 24, 2001), 62,207-08 (2001) ("[T]he Commission has long held that disputes over contracts for the sale of electric energy at negotiated, market-based rates are more appropriately resolved in court or by arbitration"); *Doswell L.P. v. Virginia Elec. & Power Co.*, Dkt. Nos. EL92-37-000, EL92-43-000, 1992 WL 318465, at *5 (F.E.R.C. Nov. 4, 1992) ("The Commission does not see how it is in a better position than a court to interpret the Power Purchase Agreements in accordance with Virginia contract law.  Expertise in contract interpretation . . . is within the court's realm"); *Pubic Serv. Co. of N.H. v. New Hampshire Elec. Coop., Inc.*, Dkt. No. EL91-6-000, 1991 FERC LEXIS 689, at *11 (F.E.R.C. Apr. 4, 1991) ("Bill collection actions belong before an appropriate court, not this Commission").