WL 244400 (F.E.R.C. Apr. 19, 1998); *Louisiana Natural Gas Pipeline Inc.*, Dkt. Nos. RP93-91-000, 1993 FERC LEXIS 2387 (F.E.R.C. LEXIS Nov. 4, 1993).

Thus, contrary to any impression Snohomish intends to convey, the action EPMI commenced seeking the Termination Payment is one governed by state law and – absent EPMI's chapter 11 proceedings – would have been litigated in state court, not before FERC.

## I. THE BANKRUPTCY COURT CORRECTLY DETERMINED THAT SNOHOMISH'S PETITIONS TO FERC SOUGHT TO EXERCISE CONTROL OVER PROPERTY OF EPMI'S ESTATE AND THEREFORE VIOLATED THE AUTOMATIC STAY

### A. Overview

The Bankruptcy Code provides for an automatic stay of any action against or to exercise control over property of the debtor's estate. 11 U.S.C. § 362. The automatic stay is mandatory and begins from the time a bankruptcy petition is filed. *See*, *e.g.*, *In re Enron Corp.*, 300 B.R. 201, 211 (Bankr. S.D.N.Y. 2003) ("The stay protection in § 362 is automatic and mandatory with the filing of the petition"); *Metromedia Fiber Network, Inc. v. Lexent, Inc. (In re Metromedia Fiber Network, Inc.)*, 290 B.R. 487, 493 (Bankr. S.D.N.Y. 2003) ("The automatic stay most certainly is 'self executing' in the sense that it must be complied with absent any action by the debtor or the court, at the risk of sanctions for violation"). Further, the automatic stay still applies to property of EPMI's estate pursuant to EPMI's confirmed plan of reorganization. *See* Supplemental Modified Fifth Amended Joint Plan, (*In re Enron Corp.* (Dkt. No. 19579 July 14, 2004) at § 42.5 ("all injunctions or stays provided for in the Chapter 11 Cases pursuant to sections 105, 362 or 525 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until entry of an order [closing the Chapter 11 Cases]. . . .")).

Snohomish's petitions to FERC violated the automatic stay embodied in § 362(a)(3) because both were actions "against" or "to exercise control" over property of the estate. *Keene Corp. v. Acstar Ins. Co. (In re Keene Corp.),* 162 B.R. 935, 941 (Bankr. S.D.N.Y. 1994).[19] Snohomish's petitions meet both of these conditions: EPMI's right to a Termination Payment is "property of the estate;" and Snohomish is seeking to exercise control over that property by prosecuting outside the Bankruptcy Court its affirmative claim that it does not owe EPMI the Termination Payment. As Judge Gonzalez recognized (and as is discussed in points I.A-C below), the law on this point is crystal clear; Snohomish's assertions to the contrary are unavailing.

From a practical standpoint, the applicability of the automatic stay is self-evident from the context of this case alone. The long procedural history – beginning in the Bankruptcy Court and culminating in this Court's August 31, 2006 decision, with which the Court is intimately familiar – makes no sense unless Snohomish was barred by the automatic stay from having sought relief before FERC in the first place. Unless the automatic stay bars Snohomish's FERC petitions, this Court's August 31, 2006 Decision on the same issues being litigated in Bankruptcy Court becomes pointless. Equally pointless would be the continuing litigation over the Cantwell Amendment's meaning.

---

[19] It is not necessary for this Court to decide whether Snohomish's first FERC petition when originally filed in 2005 was a willful violation of the automatic stay, given that that petition was filed prior to the Court's August 31, 2006 Decision. However, the amended FERC petition – which came after this Court's August 31, 2006 Decision – was a blatant and willful violation of the stay from the moment it was filed.

**B. Section 362(a)(3) Bars Actions Instituted Against Property Of EPMI's Estate Such As Its Contractual Right To Termination Payments**

Section 362 of the Bankruptcy Code prohibits "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate[.]" 11 U.S.C. § 362(a)(1), (3). Importantly, § 362(a)(3) protects "*every interest* of the Debtor in property of the estate" and prohibits "*any* exercise of control over property of the estate." *See Transouth Fin. Corp. v. Sharon (In re Sharon)*, 234 B.R. 676, 681 (B.A.P. 6th Cir. 1999) ("Every interest of the Debtor in 'property of the estate' is protected by [Section] 362(a)(3)"); *Abrams v. Southwest Leasing & Rental Inc. (In re Abrams)*, 127 B.R. 239, 241 (B.A.P. 9th Cir. 1991) ("The second clause of [Section] 362(a)(3) . . . was added by the Bankruptcy Amendments and Federal Judgeship Act of 1984 . . . to clarify that the automatic stay extends to *any* exercise of control over property of the estate"). To enforce the automatic stay, courts do not hesitate to enjoin "litigation which seeks to obtain a judgment against the estate or to interfere with property of the debtor" outside of the bankruptcy context. *See, e.g.*, *Port Jefferson Station Auto Collision Corp. v. Bimco Indus., Inc. (In re Bimco Indus., Inc.)*, 124 B.R. 623, 626 (E.D.N.Y. 1991).[20]

Section 541(a) of the Bankruptcy Code broadly defines property of the estate to include "all legal or equitable interests of the debtor in property as of the commencement of the

---

[20] Its citation to *Checkers Drive-in Restaurant, Inc. v. Commissioner of Patents & Trademarks*, 51 F.3d 1078 (D.C. Cir. 1995) provides Snohomish no support. *Checkers* held that a non-debtor could not claim its failure to file an affidavit with the United States Patent and Trademark Office regarding its own trademarks was excusable because the filing would have been barred by the automatic stay. The court held that the automatic stay was inapplicable, because the regulatory filing had "no effect upon . . . the property of the estate . . . [it only] maintains the status quo with respect to the property of an entity engaged in litigation with the debtor," and that the regulatory filing was at most "tangentially related" to the underlying dispute with the debtor. *Id.* at 1083. On the other hand, Snohomish's institution of the FERC proceedings goes to the very heart of whether the Termination Payment is owed and is therefore property of the estate. Moreover, Snohomish actually sought to displace the Bankruptcy Court as the forum to decide EPMI's state law claims.

case" as well as "property that the estate acquires after the commencement of the case." 11 U.S.C. § 541(a)(1), (7). Applying this broad definition, courts consistently hold that a debtor's contracts, and its rights in and under such contracts, constitute property of the estate and are protected by the automatic stay. *See In re Enron*, 300 B.R. at 212 (finding that intangible contract rights "'are property of the estate, and that therefore those rights are protected by the automatic stay'") (citation omitted); *Cohen v. Drexel Burnham Lambert Grp., Inc. (In re Drexel Burnham Lambert Grp., Inc.)*, 138 B.R. 687, 702 (Bankr. S.D.N.Y. 1992) (holding that "contracts are property of the estate within the meaning of [Section] 541"); *LTV Corp. v. Aetna Cas. & Sur. Co. (In re Chateaugay Corp.)*, 116 B.R. 887, 898 (Bankr. S.D.N.Y. 1990) ("Contractual rights are intangible property which is included within the definition of the estate of the debtor"). Courts have also held that litigation claims, like EPMI's here, belonging to a debtor, are property of the estate protected by the automatic stay. *See America Nat'l Bank of Austin v. MortgageAm. Corp. (In re MortgageAm. Corp.)*, 714 F.2d 1266, 1274 (5th Cir. 1983) (property of the estate included "rights of action"); *Schaffer ex rel. Lasersight, Inc. v. CC Invs., LDC*, 286 F. Supp. 2d 279, 281 (S.D.N.Y. 2003) (*same*).

### C. Snohomish Impermissibly Contorts Cases Permitting A Party To Defend Itself In Litigation Brought By A Debtor Into An Unfettered Right To Institute New Proceedings Outside The Bankruptcy Context

Snohomish would excuse its frontal assaults on the automatic stay by distorting beyond recognition case law dealing with (1) the assertion of defenses in a matter commenced by the debtor outside of the bankruptcy court and (2) interpleader actions. Snohomish argues that "it has long been the law that a defendant does not violate the automatic stay when *as here*, it asserts defenses to a disputed claim brought against it *by the debtor*." (Sno. Br. at 23) (emphasis added). It is undoubtedly true that a defendant is not barred by the automatic stay from asserting defenses in an action commenced and being prosecuted by the debtor, irrespective of the forum.

*Martin-Trigona v. Champion Fed. Svgs. & Loan Ass'n*, 892 F.2d 575, 577 (7th Cir. 1989) ("the automatic stay is inapplicable to suits *by* the" debtor) (emphasis in original); *Justus v. Fin. News Network, Inc. (In re Fin. News Network, Inc.)*, 158 B.R. 570 (Bankr. S.D.N.Y. 1993).[21] But those cases are inapposite, because, in each, the non-debtor was simply defending itself in the exact same forum and case in which the debtor had commenced an action against it. The critical difference between defending a suit brought by a debtor versus bringing one against the debtor in another (non-bankruptcy) forum is made manifest by cases like *In re Financial News Network, Inc.*, also cited by Snohomish. There, the court ruled that Financial News Network's ("FNN") objection in its own chapter 11 case to a proof of claim brought by a chapter 7 debtor, Kaypro, did not constitute a violation of the automatic stay in Kaypro's case:

> FNN asserted no claim against Kaypro which could be construed as an active attempt to recover property from Kaypro or an act seeking to gain control or possession of any contract cause of action by Kapro against FNN. *This case is therefore to be distinguished from cases in which creditors of the bankruptcy estate or other third parties initiate judicial proceedings or adversary proceedings in an active attempt to circumvent the automatic stay and control the property of the bankrupt estate.*

*Id.* at 573 (emphasis added).

Judge Gonzalez correctly recognized this critical distinction, reasoning:

> The Utility further argues that the FERC Petition does not violate the automatic stay because it is only the Utility's effort to defend

[21] *United States v. Inslaw*, 932 F.2d 1467 (D.C. Cir. 1991), cited by Snohomish, provides no justification for Snohomish's actions. In *Inslaw*, the court held that the Department of Justice's use of intangible property (enhancements to a software program) in its possession to which the debtor had a legal claim was not a violation of the automatic stay. *Id.* at 1470 ("the asserted violation [of the stay] lay primarily in the Department's continuing use of Inslaw's property . . . without [the debtor's] consent"). This is not a controversial proposition, nor is it particularly helpful to Snohomish. Further, *Inslaw* turned on the fact that, there, the Bankruptcy Court lacked jurisdiction over the underlying dispute (*id.* at 1475). Here, this Court has already ruled the Bankruptcy Court has jurisdiction over the underlying dispute, which it has been exercising continuously since early 2003, long before Snohomish first petitioned FERC in 2005.

> against FPMI's claim and that such a defense is permitted. The Court agrees that, ordinarily, a party may defend against a claim brought against it without seeking relief from the automatic stay. However, in order to avoid the application of the automatic stay, any defense, based upon state-contractual law, which the Utility seeks to interpose to counter EPMI's claim in this Court should be presented in the proceeding in this Court, not in a separate proceeding in another forum that is precluded by the automatic stay from proceeding with the claim itself. Thus, the Utility cannot rely on the FERC Petition as being a response to the state court contractual issue filed by EMPI in this Court because FERC could not adjudicate the state-court contractual claim absent relief from the automatic stay.

*EPMI v. Snohomish*, 2006 WL 3140640, at *5.

Thus, Snohomish's facile use of the words "as here" comparing the instant case to *Martin-Trigona* and *In re Financial News* (Sno. Br. at 23) is a clumsy attempt to camouflage the fact that Snohomish did not file a defensive pleading in a case brought by EPMI; it commenced entirely new litigation against EPMI in an entirely different forum from the Bankruptcy Court, where EPMI's action against it had long first been pending on exactly the same state law contract issues.

**1. Snohomish's Reliance On *Lovett v. Honeywell* Is Misplaced**

Its heavy reliance on *Lovett v. Honeywell, Inc. (In re Transp. Sys. Int'l, Inc.),* 110 B.R. 888 (Bankr. D. Minn. 1990), *aff'd on other grounds*, 930 F.2d 625 (8th Cir. 1991), highlights the lack of merit in Snohomish's position. (Sno. Br. at 24-25) In that case, Honeywell first filed a petition at the Interstate Commerce Commission ("ICC") to determine whether the debtor had undercharged it, or had been paid the proper amounts. This question undoubtedly fell within the ICC's exclusive jurisdiction under the Interstate Commerce Act. Subsequently, the debtor commenced a bankruptcy adversary proceeding to collect the alleged undercharges. The lower court found that Honeywell's petition before the ICC did not violate

the automatic stay because "Honeywell's action did not assert a claim against the estate or threaten to disrupt the liquidation procedure established by the Code." *Honeywell*, 110 B.R. at 893. In addition, ICC policies in place at the time permitted it to entertain claims for undercharges without awaiting court referral, and courts had held that such claims should be deferred to the ICC so that it could perform its regulatory function of determining the reasonableness of motor carrier billing practices. Here, on the contrary, Snohomish's FERC Petition: (1) does assert claims against EPMI, including claims for sanctions; (2) threatens to disrupt the liquidation procedure in this case by preventing EPMI from litigating its state law contractual Termination Payment claims before the Bankruptcy Court, as directed by the District Court; (3) particularly prevents EPMI's innocent creditors from receiving $175 million in distributions from the estate; and (4) unlike the ICC petition in *Honeywell*, was filed long after, not before, EPMI's filing of the Adversary Proceeding and raises issues that clearly are not within the exclusive jurisdiction of FERC.

Moreover, Snohomish remarkably fails to cite the subsequent history in *Honeywell* that renders dubious the value of the lower court's decision. In affirming the lower court decision that no compensatory or punitive damages were due for a violation of § 362, the Eighth Circuit declined to endorse the lower court's reasoning or holding that Honeywell's conduct had not violated the automatic stay. The majority assumed that a stay violation had occurred for purposes of argument and held that any such violation was not willful, and therefore, Honeywell was not liable for damages. The dissenting judge expressly concluded that an automatic stay violation had occurred and that the violation had been willful. *Lovett v. Honeywell, Inc.*, 930 F.2d 625, 629 (8th Cir. 1991) (Arnold, J. M., dissenting).

**2. The Interpleader Cases Are Inapposite**

Snohomish also attempts to characterize as "defensive" cases relating to interpleader or the similar maritime action of monition. (Sno. Br. at 25-26) The interpleader cases miss the mark for a variety of reasons; first, the purpose of an interpleader "is to determine the title to the *res*," and, prior to the resolution of the interpleader, the *res* is not "property of a debtor within the meaning of the automatic stay provision." *National Coop. Ref'y Ass'n v. Rouse*, 60 B.R. 857, 860 (Bankr. D. Colo. 1986). Here, of course, EPMI's asserted contractual right to a termination payment already is property of its estate. Second, interpleader involves parties completely remote from the chapter 11 proceedings (such as non-creditors or parties which may not have contracted with the debtor), and therefore, considerations of "fairness and due process" preclude application of the automatic stay. *Id.* at 860. Similarly, the holdings in *DeWitt v. Corso (In re Corso)*, 180 B.R. 589 (Bankr. C.D. Cal. 1994) and *Price & Pierce International, Inc. v Spicer's International Paper Sales, Inc.*, 50 B.R. 25 (Bankr. S.D.N.Y. 1985), specifically are premised on unique facets of the admiralty doctrine of monition – which permits the resolution of claims of multiple parties (including those who are neither creditors of nor contracting parties with a debtor) to a single pool of money.

**II. THE POLICE AND REGULATORY POWER EXCEPTION TO THE AUTOMATIC STAY DOES NOT APPLY**

**A. Overview**

Snohomish's contention (Sno. Br. at 26-33) that 11 U.S.C. § 362(b)(4), the "police and regulatory power" exception to the automatic stay, applies to its FERC petitions cannot withstand scrutiny.[22] The exception applies where governmental units pursue actions to

---

[22] As this Court is aware, EPMI has never disputed FERC's ability to conduct proceedings on issues implicating FERC's regulatory power (as opposed to its adjudicatory power over state law issues) under the FPA. As the Bankruptcy Court observed below, "EPMI concedes that FERC has exclusive jurisdiction to determine regulatory issues." *EPMI v. Snohomish*, 2006 WL 3140640, at *5.

protect the public health and safety. Courts consistently hold that the § 362(b)(4) exception is narrowly construed. Hence, it is inapplicable in cases where the governmental action relates to determining a pecuniary interest in property of the debtor. *See, e.g., Shimer v. Fugazy (In re Fugazy Exp. Inc.)*, 124 B.R. 426, 431 (Bankr. S.D.N.Y. 1991); *Lawson Burich Assocs. v. Axelrod (In re Lawson Burich Assocs., Inc.)*, 31 B.R. 604, 611 (Bankr. S.D.N.Y. 1983). Where – as here – an agency acts purely as an adjudicator of state law, the police and regulatory power is not being employed. Accordingly, courts have consistently held that the § 362(b)(4) exception does not apply to an agency's actions to enforce state-law contractual rights against a debtor and that such actions are subject to the automatic stay. *See Enron Corp. v. California ex rel. Lockyer* (*In re Enron Corp.)*, 314 B.R. 524, 535-36 (Bankr. S.D.N.Y. 2004); *Corporacion de Servicios Medicos Hospitalarios de Fajardo v. Mora (In re Corporacion de Servicios Medicos Hospitalarios de Fajardo)*, 805 F.2d 440, 445 (1st Cir. 1986); *University Med. Ctr. v. Sullivan (In re Univ. Med. Ctr.)*, 973 F.2d 1065, 1075 (3d Cir. 1992).[23]

Here, each Snohomish FERC petition violates the automatic stay because it directly implicates private state law contract rights. The June 28, 2006 Order does not address public health, safety or welfare, or the interpretation of uniform statutes (like the FPA) designed to vindicate the public interest, which are the hallmarks of a case which fits within the § 362(b)(4) exception. *See In re Methyl Tertiary Butyl Ether ("MTBE") Prod. Liab. Lit.*, 488 F.3d 112 (2d Cir. 2007) (noting that the exception is for enforcement of laws affecting "health, welfare, morals and safety"). Nor, unlike the cases Snohomish cites, was FERC undertaking an

---

23 Snohomish's reliance on *New York v. Berry Estates, Inc. (In re Berry Estates, Inc.*) is misplaced. That case held that the automatic stay was inapplicable because the action pursued by New York state fell squarely within the state's police and regulatory power to enforce its excess rent law. 812 F.2d 71 (2d Cir. 1987).

action to decide whether EPMI violated a statute FERC enforces. *In re First Alliance Mortgage Co.*, 263 B.R. 99 (B.A.P. 9th Cir. 2001) (Massachusetts permitted to bring state court action against debtor based on violations of state consumer protection law).[24] Thus, on its face, the police power exception is inapplicable with respect to the proceedings that produced the June 28, 2006 Order. And if the June 28, 2006 Order was not shielded, then Snohomish's October 6, 2006 petition to enforce the prior FERC order equally must fall.

Indeed, that FERC's June 28, 2006 Order was intended solely for Snohomish's benefit and does not deal with matters of public health, safety and welfare establishes that the exception to the automatic stay is inapplicable. *See Chao v. Hosp. Staff. Servs., Inc.*, 270 F.3d 374, 382 (6th Cir. 2001) (because "the Secretary has undertaken this . . . action not in furtherance of public policy but primarily to assert and protect the private rights of certain individuals . . . the police power exception does not apply [and] the automatic stay governs"); *see also Joe DeLisi Fruit Co. v. Minnesota Dept. of Agric. (In re Joe Delisi Fruit Co.)*, 11 B.R. 694, 696-7 (Bankr. D. Minn. 1981) (holding that § 362(b)(4) was not applicable to action brought by Minnesota Department of Agriculture that was "not to restrain or punish any violation of the statute . . . or to determine licensing requirements or to collect damages from the debtor for violation . . . . The action is by and for the benefit of the creditors of the debtor").

---

[24] Snohomish's citation to *PBGC v. LTV Corp.*, 875 F.2d 1008, 1019 (2d Cir. 1989) *rev'd*, 496 U.S. 633 (1990), is curious because the Second Circuit expressly declined to endorse the district court's conclusion that the PBCG's actions fell within § 362(b)(4). Likewise, *CFTC v. Incomco, Inc.*, 649 F.2d 128, 133 (2d Cir. 1981), offers Snohomish no support. First, *Incomco* did not actually hold that the CFTC's actions were exempted from the automatic stay – it simply noted the potential applicability of § 362(b)(4). In any event, that case represents the paradigmatic example of police power: a federal agency seeking an injunction to stop an individual and entities from engaging in commodity futures trading, and effort to obtain access to a debtor's books and records to investigate fraud. The facts of this case stand in stark contrast.

### B. Snohomish's Contention That FERC Decided Its June 28, 2006 Order "In Accordance With Its Long-Standing Authority" Lacks Merit

Snohomish's invocation of § 362(b)(4) rests on its claim that, "in determining whether Enron may collect a termination charge under its contract with Snohomish, FERC was acting in accordance with its long-standing regulatory authority to ensure that wholesale electric power is sold only pursuant to rates, charges, and contracts that are lawful. *See* 16 U.S.C. §§ 824d(a), (c), (e); 824e(a); 18 C.F.R. § 35.1(e)." (Sno. Br. at 30.) The obvious problem with this manufactured assertion is that FERC expressly stated in the June 28, 2006 Order (and this Court later agreed) that FERC was not exercising its regulatory power under the FPA.

#### 1. FERC's June 28, 2006 Order Rests Solely On Its Interpretation Of New York State Contract Law And Was Not An Exercise Of Police Or Regulatory Power

When FERC issued its June 28, 2006 Order, it explicitly acknowledged that it was not exercising its regulatory powers under the FPA, but, rather, exercising rights purportedly granted under the Cantwell Amendment, specifically the right to determine state-law contractual issues. FERC unambiguously stated that "the Commission would not typically rule on the contract issues raised by Enron's termination payment claim, or by Snohomish's Petition," because "these claims and defenses require, for their resolution, the application of state law and do not otherwise require uniform interpretation with respect to the policies we are required to administer." 2006 WL 1757334, at *1. Moreover, issues critical to the June 28, 2006 Order are not within FERC's expertise: FERC has acknowledged it "possesses no special expertise over the contractual issues raised by Vernon's petition, including Vernon's allegations regarding Mirant's insolvency, creditworthiness, and alleged fraud in inducing Vernon to enter into the Agreement. These issues, rather, turn on standard contract and/or tort principles and do not address matters arising under the FPA." *City of Vernon*, Dkt. No. EL06-3-000, 2006 WL 175733, at *11 (June 28, 2006); *see generally Arkansas La. Gas Co. v. Hall*, Dkt. No. RI76-28,

79 WL16728 (May 18, 1979). Thus, the June 28, 2006 Order directly undermines Snohomish's argument.

**2. This Court's Decision On The Cantwell Amendment Demonstrates That FERC Was Not Exercising Police Power.**

This Court confirmed that FERC's June 28, 2006 Order was based exclusively on state-law contract principles, in deciding that (i) the Cantwell Amendment was merely clarifying legislation and did not transfer exclusive jurisdiction of the state-law contractual claims in this case to FERC and (ii) the Bankruptcy Court had jurisdiction over the state-law contractual claims in this case, including the contractual Termination Payment issue. *See* 2006 WL 2548453, at *4.

Snohomish is bound by this Court's decision and is not free to relitigate in this Court (or at FERC) whether the June 28, 2006 Order was really issued under the FPA. Accordingly, the June 28, 2006 Order, as a matter of law, did not relate to FERC's regulatory mission, and, thus, cannot fall within the police power exception to the automatic stay.

**3. *Board of Governors Of The Federal Reserve System V. MCorp Fin., Inc.* And *In re FCC* Are Inapplicable And Do Not Aid Snohomish**

*Board of Governors of the Federal Reserve System v. MCorp Financial, Inc.*, 502 U.S. 32 (1991), does not require a different result. (*See* Sno. Br. at 32-33.) In an attempt to squeeze this case within the holding of *MCorp*, Snohomish mischaracterizes the Bankruptcy Court's decisions below as an inquiry into the "legitimacy" of FERC's action. Of course, the Bankruptcy Court did nothing of the sort; its ruling in no way explored FERC's regulatory powers under the FPA, or even FERC's jurisdiction under the FPA. It merely took FERC at its own word, as had this Court, in concluding that the June 28, 2006 Order was based solely on state law and did not involve the exercise of power under the FPA.

*In re FCC*, 217 F.3d 125 (2d Cir. 2000), is completely off point. In reversing the Bankruptcy Court's imposition of the automatic stay, notwithstanding § 362(b)(4), the Second

Circuit noted it had determined in a prior appeal in the same case that the FCC was exercising regulatory power. *Id.* at 138. Thus, as that question already had been settled, the district court was improperly reviewing the merits of the FCC's decision – not merely determining whether § 362(b)(4) was applicable. *Id.* ("[T]he Bankruptcy Court lacks jurisdiction to decide whether the FCC's regulatory decision is a proper exercise of discretion, or to decide whether it is provident and in the public interest"). This stands in marked contrast to the Bankruptcy Court's October 26, 2006 decision, which scrupulously avoided any analysis of the merits of the June 28, 2006 Order, and instead focused on whether that order was an exercise by FERC of police or regulatory power. *See In re Enron Corp.*, 2006 WL 3140640, at *5. (Bankruptcy Court explicitly noted "that it is not acting as an appellate court regarding the June 28 Order").

**4. Because FERC Acted In An Adjudicatory Capacity Rather Than In An Enforcement Capacity, The Police And Regulatory Power Exception Is Inapplicable**

Snohomish also makes the blanket statement that the police power exception "permits any proceeding in which an administrative agency is acting in its capacity as a *regulator*—as opposed to its capacity as, or on behalf of, a *creditor*—to go forward notwithstanding the regulated party's bankruptcy." (Sno. Br. at 27) (emphasis in original). But that begs the question, because, here, the agency is acting as an *adjudicator* rather than a regulator in an enforcement capacity. Courts have held the police power exception is not invoked where a government agency is not enforcing its own rights, but is acting as a forum to resolve contract disputes between private parties. *See In re Christensen*, 167 B.R. 213, 216 (Bankr. D. Or. 1994) (stay barred agency from hearing contract dispute between debtor and creditor); *In re Massenzio*, 121 B.R. 688, 691-92 (Bankr. N.D.N.Y. 1990) (stay applied to agency action to assist creditor in enforcing debtors' contract obligations); *Volkswagen of Am., Inc. v. Dan Hixson Chevrolet Co. (In re Dan Hixson Chevrolet Co.)*, 12 B.R. 917, 919-21

(Bankr. N.D. Tex. 1981) (exception does not apply "where the administrative agency is acting in a quasi-judicial capacity seeking to adjudicate private rights rather than effectuate public policy as defined by regulatory law").

Both Snohomish and FERC concede that FERC was acting as a forum for resolution and not in an enforcement capacity. Snohomish's entire issue preclusion argument is premised on the fact that "FERC acted in a judicial capacity in resolving the Termination Payment issue." (Sno. Br. at 36). In addition to its own statements in the June 28, 2006 Order, FERC, in a Stipulation filed with this Court, and agreed to by Snohomish, acknowledged directly that its role in deciding Snohomish's petition is "as an adjudicator rather than a party in the proceedings before FERC."[25] The Police Power exception is inapplicable here, and the automatic stay applies.

### III. FERC'S JUNE 28, 2006 ORDER HAS NO PRECLUSIVE EFFECT

As discussed above, FERC considered Snohomish's petition only because of the Cantwell Amendment, and this Court has determined that the Cantwell Amendment did not provide FERC with exclusive jurisdiction over Termination Payment issues, nor did it provide FERC with any more jurisdiction over the Termination Payments than it otherwise would have had. Thus, under ordinary circumstances, FERC never would have considered state law issues in the proceedings leading to its June 28 Order, and, under long-standing FERC precedent, its rulings would not bind a court of competent jurisdiction where the same matter was pending. *Arkansas La. Gas Co. v. Hall*, 7 F.E.R.C. ¶ 61,175, 61, 322 (1988) (FERC held that where a matter was pending before a district court "any ruling we might issue would be advisory in nature and would not be binding on the court").

---

[25] *See* November 22, 2006 Stipulation at ¶ 3, annexed hereto as Exhibit 2.

More fundamentally, any action taken in violation of the automatic stay is not simply voidable, but void *ab initio*. As Judge Gonzalez held (relying on this Court's August 31, 2006 Decision):

> FERC could only have exercised its concurrent jurisdiction to applicable state law contractual claims if Snohomish had first obtained relief from the automatic stay. As the automatic stay had not been lifted, the FERC Petition process, insofar as it relates to the state law Termination Payment Issues was void *ab initio* and the resulting [order] was a nullity.

*Id.* at 15 (emphasis in original).

Snohomish contends that because FERC's June 28 Order denying Enron's entitlement to collect a Termination Payment from Snohomish is not void, it should be accorded preclusive effect. (Sno. Br. at 34-35.) Snohomish's own brief, thus, concedes that, if FERC's June 28 Order was void, it cannot take precedence over the Bankruptcy Court's decision.

When an action is void, as opposed to voidable, it is automatically and inherently a nullity. No action need be taken to have the action negated. In fact, the Bankruptcy Court is not obligated to extend full faith and credit to judgments which are void *ab initio*. *See In re Gruntz*, 202 F.3d 1074, 1082 n.6 (9th Cir. 2000) ("Because, among other reasons, judicial proceedings in violation of the stay are void *ab initio*, the Bankruptcy Court is not obligated to extend full faith and credit to such judgments"); *In re Vierkant*, 240 B.R. 322, 325 (B.A.P. 8th Cir. 1999) ("[A]s a matter of law, a void default judgment cannot be given collateral estoppel effect in an adversary proceeding seeking the nondischargeability of a debt based upon that default judgment"); *Kalb v. Feuerstein*, 308 U.S. 433, 438 (1940) (holding that foreclosure order of the state court, in violation of the stay, "was not merely erroneous but was beyond its power, void, and subject to collateral attack"). Because the Bankruptcy Court correctly found the FERC

proceedings leading to the June 28, 2006 Order were in violation of the stay, the June 28, 2006 Order was void *ab initio*. By definition, a void *ab initio* order cannot have preclusive effect.[26]

## IV. THE BANKRUPTCY COURT DID NOT ABUSE ITS DISCRETION IN DECLINING TO STAY ON "PRIMARY JURISDICTION" GROUNDS THE ADVERSARY PROCEEDING PENDING FINAL ADJUDICATION BY FERC OF SNOHOMISH'S PETITION AGAINST EPMI UNDER THE FPA

### A. Overview

Snohomish argues in the alternative that, if FERC's June 28, 2006 Order does not have preclusive effect, then EPMI's adversary proceeding to collect the Termination Payment should have been stayed pending FERC's final ruling in its Partnership and Gaming Proceeding. (Sno. Br. at 41-50) As a threshold matter, Snohomish lacks standing to raise this argument, as the primary relief Snohomish sought below was dismissal of this adversary proceeding in favor of arbitration – which is exactly the relief Judge Gonzalez granted. Snohomish sought a stay pending the outcome of the Partnership and Gaming Proceeding only as a secondary form of relief, in the event that the Bankruptcy Court declined to order arbitration. Because Snohomish received the primary relief it requested, it was not aggrieved by Judge Gonzalez's arbitration order and cannot challenge that order on appeal.

Snohomish's argument also fails on the merits. Although Snohomish purports to rely on "primary jurisdiction," it incorrectly: (i) confuses and conflates the two different strands of the real primary jurisdiction doctrine, neither of which applies here; (ii) relies on inapplicable decisions concerning materially different regulatory agency schemes; and (iii) actually is relying on theories of "judicial economy" and "case management" that find no support in relevant case

[26] Snohomish's reliance on *Borough of Lansdale v. PP & L, Inc.*, 426 F. Supp. 2d 264 (E.D. Pa. 2006) (Sno. Br. at 38-39), is fatally flawed. *Lansdale* did not involve a FERC decision rendered in violation of the automatic stay.

law. Indeed, nothing exists to demonstrate that Judge Gonzalez abused his discretion to deny Snohomish's stay request, however labeled.

**B. Snohomish Lacks Standing To Assert Its Primary Jurisdiction Argument**

Under well-established law, "[b]ecause standing to appeal is conferred only on parties 'aggrieved' by the judgment, a party generally does not have standing to appeal when the judgment terminates the case in his favor." *Concerned Citizens of Cohocton Valley, Inc. v. New York State Dept. of Envtl. Conservation*, 127 F.3d 201, 204 (2d Cir. 1997). Thus, if the trial court "grants the ultimate relief a party requested," that party "is generally not 'aggrieved' by the judgment and may not appeal." *Id.*

Here, Snohomish argues that if EPMI's contract claim is not foreclosed by the June 28, 2006 Order, then the Bankruptcy Court should have ordered a stay pending the outcome of the Gaming and Partnership Proceeding, rather than entering the arbitration order from which Snohomish has appealed. (Sno Br. at 41-50) In the Bankruptcy Court, however, Snohomish made the exactly opposite argument: it requested that the Bankruptcy Court order arbitration; it sought a stay as alternative relief, only if its arbitration request was denied. Specifically, Snohomish posited below, "The threshold question is whether [the Bankruptcy Court] must dismiss the Adversary Proceeding based on the broad arbitration clause in [the parties' contract]." Memorandum of Law, *EPMI v. Snohomish* (Adv. P. Dkt. No. Nov. 14, 2006). Snohomish's request for a stay was only alternative relief, as its briefs below make clear. Snohomish stated, "*If this Court declines to dismiss the Adversary Proceeding*, it would still be required to defer until FERC completes its ongoing proceedings to determine just and reasonable rates . . . ." *Id.* at 2 (emphasis added).[27]

[27] The same sequence of requests was repeated in the "Conclusion" section of Snohomish's memorandum below and in its reply memorandum (the "Reply"). Snohomish's "Conclusion" requested

In fact, the Bankruptcy Court ordered that the arbitration clause in the parties' contract governs and dismissed the adversary proceeding in favor of arbitration. Therefore, because the Bankruptcy Court's arbitration order "granted [Snohomish] all the relief they requested at that point," Snohomish lacks standing to appeal the Bankruptcy Court's order. *In re Reporters Comm. for Freedom of the Press*, 773 F.2d 1325, 1328 (D.C. Cir. 1985) (Scalia, J.). The case law is clear: "'A party may not appeal from a judgment or decree in his favor.'" *Id.* (*quoting Electrical Fittings Corp. v. Thomas & Betts Co.*, 307 U.S. 241, 242 (1939)). Snohomish cannot appeal a result it requested merely because it disagrees with the reasoning by which Judge Gonzalez reached that result or because it dislikes certain statements in his opinion. *In re O'Brien*, 184 F.3d 140, 141 (2d Cir. 1999) (Vermont could not appeal order granting its motion to dismiss in order to object "to the Bankruptcy Court's rationale for granting the motion . . . Because Vermont received all the relief it sought – dismissal of appellee's adversary complaint – it was not . . . an 'aggrieved person' and thus lacked standing to appeal"). A winning party "cannot appeal a judgment merely because there are passages in the court's opinion that displease him." *Id.* at 142 (*quoting Abbs v. Sullivan*, 963 F.2d 918, 924 (7th Cir. 1992)). An appellate court reviews "judgments, not statements in opinions." *Id.* (*quoting California v. Rooney*, 483 U.S. 307, 311 (1987)).

---

that "Enron's complaint be stayed or dismissed based on the arbitration clause in the Contract. In the event that this Court declines to grant such relief, Snohomish respectfully requests . . . that the Complaint be stayed or dismissed for reasons set forth herein unrelated to the arbitration provision . . . ." Mem. of Law, *EPMI v. Snohomish* at 136 (Adv. P. Dkt. No. 88, Nov. 14, 2006). Snohomish's Reply argued that EPMI "should be required to arbitrate this dispute and this case should be stayed or dismissed in favor of arbitration for the reasons set forth here and in Snohomish's opening brief. Alternatively, this Court should defer to [FERC] until it completes its ongoing proceedings . . . ." Reply Mem. of Law, *EPMI v. Snohomish* at 1 (Adv. P. Dkt. No. 105). The "Conclusion" in Snohomish's Reply stated that its "cross-motion staying or dismissing this action based on the arbitration clause in the Contract should be granted. In the event that this Court declines to grant such relief, Snohomish respectfully requests that the . . . Court defer taking further action to permit FERC to consider issues within its regulatory authority. . . ." *Id.* at 88.

Snohomish is bound by its request for relief below. It cannot argue that Judge Gonzalez erred by granting exactly the relief that it requested. "It is a cardinal rule of appellate review that a party may not challenge as error a ruling or other trial proceeding invited by that party." *Ford v. Garcia*, 289 F.3d 1283, 1293-94 (11th Cir. 2002) (citation omitted).[28] Accordingly, the Court should not consider Snohomish's stay argument.

**C. Snohomish's "Primary Jurisdiction" Argument Lacks Merit**

Were the Court to consider the stay argument, it should affirm the bankruptcy court. Snohomish asserts that a stay is required under the doctrine of "primary jurisdiction," because FERC is considering the validity under federal law of a contract that EPMI seeks to enforce under state law. (Sno Br. at 44) Snohomish's argument fails because the real primary jurisdiction doctrine applies only when there is an overlap between the issues before a court and an administrative agency. No such overlap exists here: FERC is not considering any of the state law issues relevant to EPMI's breach of contract claim, and neither the Bankruptcy Court nor the arbitration panel is considering the federal law issues that are before FERC.

**1. Snohomish Has Confused And Conflated The Two Doctrines of "Primary Jurisdiction" – And Neither One Applies Here**

The doctrine of primary jurisdiction "is really two doctrines." *Arsberry v. Illinois*, 244 F.3d 558, 563 (7th Cir. 2001). The "central and original form," which is really a rule of "exclusive agency jurisdiction," applies when "in a suit involving a regulated firm . . . an issue

---

[28] *Accord Eateries, Inc. v. J.R. Simplot Co.*, 346 F.3d 1225, 1229 (10th Cir. 2003) (the appellant could not complain that the trial court applied the damages rule it requested; the invited error doctrine "prevents a party from inducing action by a court and later seeking reversal on the ground that the requested action was error") (citation omitted); *Interactive Gift Express, Inc. v. Compuserve Inc.*, 256 F.3d 1323, 1345 (Fed. Cir. 2001) ("a party will be judicially estopped from asserting a position on appeal that is directly a position that the party successfully urged at trial"); *United States v. Jones*, 763 F.2d 518, 524 (2d Cir. 1985) (the Second Circuit "look[s] with disfavor on [a party's] tactic" of claiming error on appeal based on requests by that party "which are granted by a trial court").

arises that is within the exclusive original jurisdiction of the agency to resolve." *Id.* As discussed below, this primary jurisdiction rule can be triggered by regulatory schemes that allow challenges to the reasonableness of regulated contracts to be asserted in court actions.

The doctrine of primary jurisdiction is also "sometimes defined quite differently," as a rule implicating *concurrent jurisdiction* that allows courts to refer to an agency issues within the court's jurisdiction that involve "a matter extending beyond the 'conventional experiences of judges' or 'falling within the realm of administrative discretion.'" *Arsberry,* 244 F.3d at 563 (*quoting National Communications Ass'n, Inc. v. AT&T Co.*, 46 F.3d 220, 222-23 (2d Cir. 1995)). "The threshold issue in determining whether this doctrine applies is whether both the court and an agency have jurisdiction over the same issue." *Golden Hill Paugussett Tribe of Indians v. Weicker*, 39 F.3d 51, 59 (2d Cir. 1994).[29] Snohomish ignores this threshold requirement for concurrent jurisdiction. As discussed below, because concurrent jurisdiction does not exist here, this primary jurisdiction rule also does not apply. In any event, even if applicable, lower courts have substantial discretion as to whether or not to invoke this strand of primary jurisdiction, and Snohomish has failed to demonstrate that Judge Gonzales abused that discretion.

Snohomish's confusion about the fact that two different doctrines are involved is common.[30] Because Snohomish has failed to identify any overlap between EPMI's contract

---

29 *Accord Fulton Cogeneration Assocs. v. Niagara Mohawk Power Corp.*, 84 F.3d 91, 97 (2d Cir. 1996) ("The aim of the doctrine . . . is to ensure that courts and agencies with concurrent jurisdiction over a matter do not work at cross-purposes").

30 *See Sears Roebuck & Co. v. San Diego County Dist. Council of Carpenters*, 436 U.S. 180, 199 n.29 (1978) (the use of the term "primary jurisdiction" to refer to exclusive agency jurisdiction "should not be confused with the doctrine of primary jurisdiction," which guides "a court in determining whether the court should refrain from exercising its jurisdiction until after an administrative agency has determined some question or some aspect of some question arising in the proceeding before the court"); Paula K. Knippa, *Primary Jurisdiction Doctrine and the Circumforaneous Litigant*, 85 Tex. L. Rev. 1289, 1301 (2007) (describing the confusion in primary jurisdiction law, including the "multiple doctrinal disorder").

claim and the ongoing FERC FPA proceeding that would trigger *either* strand of the doctrine of primary jurisdiction, its contentions under both doctrines must fail.

**2. Exclusive Agency Jurisdiction Is Lacking**

The primary jurisdiction doctrine has been applied to issues in the exclusive jurisdiction of administrative agencies in connection with regulatory schemes that are significantly different from the regulatory scheme that governs the present case. In particular, primary jurisdiction has been invoked to stay federal court proceedings where – unlike here – a regulatory scheme provides that *only* a federal agency can take action with respect to a cause of action. Because no such regulatory scheme exists here with respect to EPMI's state law contract claims, particularly given this Court's August 31, 2006 Decision, Snohomish cannot invoke this strand of the primary jurisdiction doctrine.

Snohomish cites, for example, *Reiter v. Cooper*, 507 U.S. 258 (1993), which explained that, under the Interstate Commerce Act (the "ICA"), shippers are granted "an express cause of action against carriers for damages . . . in the amount of the difference between the tariff rate and the rate determined to be reasonable by the ICC, [49 U.S.C.] § 11705(b)(3)." *Id.* at 262-63. When such a claim is asserted, therefore, a court must defer to the ICC to determine the difference, if any, between the contract rate and the reasonable rate. Most of the stay decisions that Snohomish relies upon involved this ICA cause of action.

Two aspects of the ICA cause of action are significant. First, the primary jurisdiction doctrine is triggered by the ICA only because it creates a private right of action for reasonable rates that can be asserted in a *judicial* proceeding. The ICA gives shippers the right to assert a claim in judicial proceedings that depends upon a determination (regarding the reasonableness of the rates) that is within the exclusive jurisdiction of (and thus can only be made by) the ICC. This creates an overlap between the claim before the court and a matter

within the agency's exclusive jurisdiction. Thus, in *Arsberry*, Judge Posner cited a decision involving an ICA claim as an example of the exclusive jurisdiction strand of primary jurisdiction. *Arsberry*, 244 F.3d at 563 (*citing Advance United Expressways, Inc. v. Eastman Kodak Co.*, 965 F.2d 1347 (5th Cir. 1992)).

Second, unlike the ICA, the FPA creates no cause of action for reasonable rates. Although Snohomish argues that the FPA requires sellers to charge "just and reasonable" rates (Sno. Br. at 41), it is settled that this requirement "creates no right which courts may enforce." *Montana-Dakota Utils. Co. v. Northwestern Pub. Serv. Co.*, 341 U.S. 246, 251 (1951). Thus, "there is no private right of action under the Federal Power Act to seek a 'just and reasonable' rate." *Hendricks v. Dynegy Power Mktg., Inc.*, 160 F. Supp. 2d 1155, 1160 (S.D. Cal. 2001).

In *Reiter*, the Supreme Court explained the difference between a statutory reasonable rate requirement (which appears in both the ICA and the FPA) and an express statutory cause of action for reasonable rates or "reparations" (which is in the ICA but not the FPA). The Court held that the filed rate doctrine bars not only common law claims and defenses that challenge the validity of regulated contracts, but also "any 'unreasonable rate defense,' derived from the general ICA requirement . . . that a carrier's rates be 'reasonable.'" *Reiter*, 507 U.S. at 266. A claim challenging rates under the ICA is permitted, therefore, only because the filed rate doctrine does not preclude "the reparations rights explicitly conferred by [Congress in ICA] § 11705(b)(3)." *Id.*[31]

[31] In holding that no claim for judicial relief can be based on a statutory requirement for reasonable rates, *Reiter* cited the decision in *T.I.M.E. Inc. v. United States*, 359 U.S. 464 (1959), which explains that, "As this Court recognized in *Montana-Dakota Utils. Co. v. Northwestern Pub. Serv. Co.*, 341 U.S. 246, 251, language of this sort in a statute which entrusts rate regulation to an administrative agency in itself creates only a 'criterion for administrative application in determining a lawful rate' rather than a 'justiciable legal right.' In *Montana-Dakota*, it was held that the Federal Power Act, which . . . expressly declares unreasonable rates to be 'unlawful,' does not create a cause of action for the recovery of allegedly unreasonable past rates." 359 U.S. at 469-70.

Because the FPA creates no similar claim for judicial relief, there is no overlap between a FERC claim that contract rates are unreasonable and a judicial action that, as here, seeks to enforce the contract under state law. Nor has Snohomish ever argued that any overlap exists here. Rather, Snohomish (i) argues that its FPA claims in the FERC Gaming and Partnership Proceeding are within FERC's exclusive jurisdiction, and (ii) does not contend that the Bankruptcy Court or the arbitration panel lacks jurisdiction over any element of EPMI's state law claim to enforce the parties' contract.

Under these circumstances, the exclusive agency strand of primary jurisdiction simply cannot apply. Snohomish cites no decision that stayed an action to enforce a power contract on the ground that resolution of the action required consideration of an issue within FERC's exclusive jurisdiction. Indeed, the law is just the opposite. In *Gulf States Utils. Co. v. Alabama Power Co.*, 824 F.2d 1465 (5th Cir. 1987), a judicial action to enforce a power contract and a FERC proceeding challenging the validity of the contract simultaneously existed. The Fifth Circuit upheld the district court's decision *not* to stay the judicial action, since there was no overlap between the state law issues before the court and the reasonableness issue before FERC. *Id.* at 1472-74. Since there is also no overlap in the present case, no stay is required or appropriate here.

### 3. Concurrent Jurisdiction Does Not Exist With Respect To The Issue Now Before FERC

As discussed above, the threshold requirement for the second strand of primary jurisdiction is that "the court and an agency have concurrent jurisdiction over the same issue." *Golden Hill*, 39 F.3d at 59. When [concurrent] jurisdiction exists, the doctrine allows – but does not require – a court to refer an issue within its jurisdiction if it involves "technical and intricate

questions of fact and policy that Congress has assigned to a specific agency." *National Commc'ns Ass'n*, 46 F.3d at 223.

While Snohomish cites three decisions (Sno. Br. at 48-49) that stayed actions to enforce power contracts, each case involved a contract interpretation issue that was within the jurisdiction of the court, but which raised technical or policy questions that the court chose *in its discretion* to refer to FERC.[32] Snohomish has not even tried to suggest that such questions exist in this case. Snohomish argues only that a stay is required to wait for FERC to decide issues within its *exclusive* jurisdiction. In making that exclusive jurisdiction argument, Snohomish also improperly (and confusingly) relies on the criteria courts employ in deciding whether to refer issues within their concurrent jurisdiction to agencies – such as whether an issue is within the "conventional experience of judges" or instead calls for agency expertise. (Sno. Br. at 44-45.) The inapplicability of this consideration to Snohomish's argument is readily apparent: there is no reason to consider whether an issue is within the conventional experience of judges if it is already committed to an agency's exclusive jurisdiction.

Similarly, while Snohomish does not dispute Judge Gonzalez's ruling that "the state law claims are not within FERC's particular expertise" (a conclusion which echoes FERC's own decision in the June 28, 2006 Order), it nonetheless argues that Judge Gonzalez asked "the

---

[32] *Wagner & Brown v. ANR Pipeline Co.*, 837 F.2d 199, 202-06 (5th Cir. 1988) (in referring the interpretation of a contract provision in light of statutory requirements, the court rejected the argument "that FERC has exclusive jurisdiction over construction of take-or-pay contracts" and held that, if FERC delayed in interpreting the contract, "then the district court should proceed to adjudicate the rights of the parties without further deference to the expertise of FERC"); *New York State Elec. & Gas Corp. v. New York State Indep. Sys. Operator*, 168 F. Supp. 2d 23, 25-28 (N.D.N.Y. 2001) (both the court and FERC had jurisdiction over a power purchase contract that did not fix rates, but rather incorporated a tariff that provided for the seller, a non-profit company, to manage a local power market and to use "good utility practices" to set rates; the calculation of the contract rates under those circumstances involved technical issues within FERC's expertise); *In re Megan-Racine Assocs.*, 180 B.R. 375, 377-81 (Bankr. N.D.N.Y. 1995) (contract required the seller to comply with statutory requirements for a qualifying cogeneration facility that were within FERC's expertise).

wrong question" because the test is allegedly "whether some parts of the case are within the exclusive jurisdiction of the agency." (Sno. Br. at 46 (*quoting Alberta Gas Chems. Ltd. v. Celanese Corp.*, 650 F.2d 9, 13 (2d Cir. 1981)). In fact, Judge Gonzalez asked exactly the *right* question in deciding whether to apply the concurrent jurisdiction strand of the primary jurisdiction rule.[33]

In arguing that "some parts of the case" are within FERC's exclusive jurisdiction, Snohomish again injects the "exclusive jurisdiction" strand of the primary jurisdiction rule into the concurrent jurisdiction analysis. But, as discussed above, Snohomish's contention that "some parts" of this adversary proceeding are within FERC's exclusive jurisdiction is plainly wrong, as no claim based on the FPA reasonableness requirement has been (or could be) asserted in the adversary proceeding which involves only state law issues. In short, because there is no overlap between this action and the FERC Partnership and Gaming Proceeding, neither strand of the primary jurisdiction doctrine applies here.

**D. The Bankruptcy Court Correctly Declined To Exercise Its Discretion To Order A Stay Based On Snohomish's Vague Notions Of Judicial Economy**

Although Snohomish's stay argument is purportedly based on "primary jurisdiction," it really rests on generalized assertions of judicial economy and good case management. Indeed, Snohomish contends that because the FERC Gaming and Partnership Proceeding might moot EPMI's claim, the Bankruptcy Court should have conserved judicial resources and awaited the agency's ruling. The Bankruptcy Court properly rejected this

---

[33] *See, e.g., Fulton Cogeneration Assocs.*, 84 F.3d at 97 (the primary jurisdiction doctrine was "inappropriate" in a case involving enforcement of a power purchase agreement "because the issues of contract interpretation here are neither beyond the conventional expertise of judges nor within the special competence of the [agency]"); *National Commc'ns Ass'n*, 46 F.3d at 223 (primary jurisdiction did not apply because the case did "not present any issues involving intricate interpretations or applications of tariffs that might need the FCC's technical or policy expertise").

argument, and its decision not to grant a stay is reviewed under an abuse of discretion standard. *See Reiter v. Cooper*, 507 U.S. at 265, 270 (1993) (the decision whether to proceed to judgment on an action to enforce a regulated contract or to stay the action pending the outcome of an administrative challenge to the regulated rates is a discretionary decision reviewed under an abuse of discretion standard). *See also Pikna,* 880 F.2d at 1584.

The governing principle here mandates that federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). Hence, Judge Gonzalez correctly held that he could proceed with this adversary proceeding, because "the filed-rate doctrine requires that contracts be enforced in accordance with the contractual rates unless and until those rates are set aside." This Court similarly has ruled in another case that, "under the filed tariff doctrine, courts must give effect to a tariff provision unless it has been found to violate the [regulatory] Act." *AT&T Corp. v. Public Serv. Enters. of Pa., Inc.*, No. 98 Civ. 6133 (LAP), 1999 WL 672543, at *4 (S.D.N.Y. Aug. 26, 1999) (Preska, J.).[34]

Snohomish contends that the filed rate doctrine does not forbid a court from staying a proceeding while the contract rate is being challenged before an agency, (Sno. Br. at 48), relying on cases in which shippers responded to actions to enforce filed rates by asserting claims under the ICA that the rate was unreasonable. (Sno. Brief at 49 & n.34). As discussed

---

[34] *Accord Reiter*, 507 U.S. at 270 ("tariff rates not disapproved by the ICC are legal rates, binding on both the shipper and the carrier"); *Cincinnati Bell Tel. Co. v. Allnet Commc'n Servs., Inc.*, 17 F.3d 921, 924-25 (6th Cir. 1994) ("The FCC has the power to determine [the contract] rate to be unreasonable, but until it does, the parties are bound by the lawfully filed tariff."); *National Commc'n Ass'n, Inc. v. AT&T Co.*, No. 93 Civ. 3707 (LAP), 2001 WL 99856, at *6 (S.D.N.Y. Feb. 5, 2001) (Preska, J.) ("The clear line of authority regarding rate disputes is that the customer may not . . . merely refuse payment of the disputed rate but must pay the rate and then bring an action to determine the validity of the carrier's actions."); *Advamtel, LLC v. Sprint Commc'ns Co.*, 105 F. Supp. 2d 476, 483 (E.D. Va. 2000) ("plaintiffs' filed tariff rates are presumptively valid, and until those rates are deemed unreasonable by the agency, plaintiffs are entitled to enforce them").

above, however, those decisions concerned an ICA cause of action that has no counterpart under the FPA. More importantly, the decisions Snohomish relies upon all pre-dated *Reiter*, which held that, because the ICA cause of action is a counterclaim (rather than a defense), a federal court can enter a separate final judgment enforcing the contract, without waiting for the ICC to make the reasonableness determination required to resolve the counterclaim. *Reiter*, 507 U.S. at 265. The decision whether to enter a separate judgment is "largely discretionary" and is reviewed under an abuse of discretion standard. *Id.* at 265, 270.

*Reiter* also held that in "the ordinary case," the "equities favor separate judgment on the principal claim," since "referral of the unreasonable-rate issue could produce substantial delay, and tariff rates not disapproved by the ICC are binding on both the shipper and the carrier." *Id.* at 270. Decisions post-*Reiter*, therefore, have *denied* stays pending agency proceedings and held instead that the filed rate should be enforced.[35]

Under *Reiter*, stays have been denied even though a counterclaim challenging the contract rates can be filed in the court action. Because the FPA does not authorize such a counterclaim, the decision contemplated by *Reiter* (whether to enter a separate judgment or stay the contract enforcement claim) cannot even arise in an action (like this one) to enforce a power contract.[36]

---

[35] *Advamtel, LLC*, 105 F. Supp. 2d at 481-83; *MCI Telecomm. Corp. v. Dominican Commc'ns Corp.*, 984 F. Supp. 185, 191 (S.D.N.Y. 1997); *Baltimore & Ohio RR Co. v. Wisconsin Cent., Ltd.*, No. 93 C 3519, 1997 WL 545491, at **2-7 (N.D. Ill. Sept. 2, 1997) (denying delay of judgment confirming arbitration award and stay of enforcement of judgment pending agency proceeding), *aff'd*, 154 F.3d 404 (7th Cir. 1998).

[36] Stays have been denied under analogous circumstances in cases involving the Federal Communications Act (the "FCA"). Under the FCA, the reasonableness of rates can be challenged either before the FCC or in court, but not in both places. *Cincinnati Bell*, 17 F.3d at 923. Thus, if a shipper chooses to assert its unreasonable rate claim before the FCC, courts not only refuse to entertain the same claim, but they also enforce the filed rate without delay. *Id.* at 924-25 (upholding denial of stay); *Frontier Commc'ns of Mt. Pulaski, Inc. v. AT&T Corp.*, 957 F. Supp. 170, 176 (C.D. Ill. 1997) ("because AT&T filed a complaint with the FCC, it may not raise its reasonableness claims in this Court. . . . Instead, the

Finally, this Court's August 31, 2006 Decision rejected Snohomish's entreaties to stay proceedings related to the Termination Payments pending resolution of various FERC proceedings. In refusing to stay federal court proceedings pending final resolution of the FERC proceeding, this Court recognized "'it is in the best interest of the bankrupt entities and their creditors that bankruptcy litigation be decided quickly.'" *Luzsenac,* 2006 WL 2548453, at *4 (*quoting Celotex Corp. v. Edwards,* 514 U.S. 300, 308 (1995)). Snohomish's current request for a stay – which was properly denied by the Bankruptcy Court – seeks relief that would have substantially the same effect as the one this Court has already denied. Moreover, the arbitration panel has denied Snohomish's stay request pending rulings by FERC and by the Second Circuit on the § 1292(b) appeal.

---

Court will simply enforce Frontier's filed rates, leaving to the FCC the question of whether those rates are appropriate under the Communications Act"); *see also Robert Lewis Rosen Assocs. v. Webb*, No. 03 Civ. 6338 HB, 2003 WL 22801698, at 9-11 (S.D.N.Y. Nov. 24, 2003) (refusing to stay petition to confirm arbitration award of fees owed to theatrical agent pending the outcome of an administrative proceeding seeking determination that the agent was unlicensed and therefore not entitled to any fees, since there was no overlap of issues between the two proceedings and a judgment confirming the arbitration award would remain valid even if the agency later ordered "disgorgement of all monies awarded").

## V. CONCLUSION

For the reasons set forth herein, the Bankruptcy Court's orders should be affirmed.

Dated: New York, New York
July 16, 2007

CADWALADER, WICKERSHAM & TAFT LLP

By: /s/Israel Dahan

Israel Dahan (ID 6148)
One World Financial Center
New York, New York 10281
Telephone: (212) 504-6000

Mark C. Ellenberg (ME 6927)
Peter Friedman (PF 3932)
1201 F Street, N.W. Suite 1100
Washington, DC 20004
Telephone: (202) 862-2200

-and-

WEIL, GOTSHAL & MANGES
Peter Gruenberger (PG 6040)
Jonathan D. Polkes (JP 4265)
Howard B. Comet (HC 4353)
767 Fifth Avenue
New York, NY 10153

*Counsel for Appellee Enron Power Marketing, Inc.*